Beatrice M. BEEGAN

v.

James L. SCHMIDT.

Supreme Judicial Court of Maine.

Argued Sept. 22, 1982.

Decided Oct. 21, 1982.

Mark S. Kierstead (orally), Waterville, for plaintiff.

Preti, Flaherty & Beliveau, John P. Doyle, Jr. (orally), John J. Flaherty, Christopher J. Nyhan, Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

McKUSICK, Chief Justice.

This case comes to the Law Court on appeal from an order of the Superior Court (Kennebec County) dismissing plaintiff Beatrice M. Beegan's suit for breach of express contract against her former dentist, James L. Schmidt. The Superior Court dismissed Beegan's present lawsuit after Dr. Schmidt argued that it was barred by a judgment entered against Beegan in an earlier case she had brought against the same defendant, charging him with negligence and breach of implied contract. We hold that the Superior Court correctly applied the principle of res judicata; and consequently we affirm its dismissal of this second action brought by Beegan against Dr. Schmidt.

In September, 1980, Beegan initiated a civil action in the Superior Court (Kennebec County) against Dr. Schmidt, a dentist practicing in Augusta. Her complaint was in four counts, each of them asking for damages of $70,000 plus interest and costs. Each count alleged the following facts: Beegan "placed herself under the care of

the defendant" in the spring of 1975 and employed him "to do any and all things that were required to treat plaintiff's condition and necessary to the maintenance of good dental health in the plaintiff's mouth." Schmidt agreed to do all things necessary for plaintiff's dental health. Schmidt treated Beegan through "the late fall of 1976," but failed to diagnose her various dental diseases, including "severe dental decay [and] gum deterioration." Because of Schmidt's failure to diagnose those problems, Beegan required "extensive dental surgery and treatment" and suffered "permanent impairment and loss of teeth, great pain and suffering of body and mind, dental, periodontal, medical, and drug expenses, loss of time, and other expenses."

Counts I and II of the 1980 complaint alleged that Schmidt had been negligent in failing to diagnose and treat Beegan properly in that he had failed to use the care and skill ordinarily exercised by other local dentists in like circumstances. Counts III and IV alleged that Schmidt had "impliedly warranted" to diagnose and treat Beegan's dental condition with ordinary care and skill, and that he had violated that implied warranty.

The Superior Court dismissed Beegan's case because she had failed to file her complaint within the two-year limitations period prescribed by the legislature for "malpractice" actions. 14 M.R.S.A. § 753 (1980). The Law Court affirmed on November 9, 1981, holding that "[b]oth the claims in negligence and those in implied contract are controlled by the two-year statute of limitations." *Beegan v. Schmidt,* Me., 436 A.2d 893, 894 (1981) (memorandum of decision).

Undaunted, Beegan filed a new complaint against dentist Schmidt later in the same month of November, 1981. The 1981 complaint contains the following allegations in two separate counts: On May 7, 1975, Beegan and Schmidt entered into an express contract providing that Schmidt "would repair molars and bicuspids, for the purpose of restoring those specified teeth to a condition whereby root canal work on said teeth would not be required," and that Bee-

gan would pay Schmidt $33 per hour for his services. Schmidt worked on Beegan's teeth through January, 1976. In late 1977 and early 1978, Beegan experienced pain and headaches, consulted other dental practitioners, and discovered that Schmidt had failed to repair the molars and bicuspids which he had undertaken to restore. She then was forced to undergo additional treatment, including root canal surgery, to "restore her mouth to the condition in which it would have been had the defendant performed his contract with the plaintiff." This additional treatment cost Beegan $17,000.

Count I prays for "reasonable" damages. County II further alleges that Beegan engaged Schmidt on January 17, 1976, "for the specific purpose of determining whether or not dental problems were causing her extreme headaches and pain in her neck and head," that Beegan and Schmidt entered into a second express contract whereby Beegan would pay the dentist $30 and he would examine her to determine whether her pain was due to any dental decay, and that Schmidt collected his fee but reported to Beegan that he could find no dental conditions capable of causing the pain she had reported. Count II goes on to allege that Beegan later discovered that decay in the very molars and bicuspids Schmidt had originally agreed to treat was responsible for her pain, and that the pain ultimately forced her not only to have root canal surgery but also to leave her employment, to use prescription painkillers, and to seek psychological and medical treatment. Count II lists Beegan's damages as $17,000 for medical, dental, and psychiatric expenses and $40,000 for loss of wages.

Defendant Schmidt moved to dismiss the 1981 complaint on the ground, *inter alia,* that it was barred as res judicata by the final judgment in the 1980 suit between the same two parties. The Superior Court granted Schmidt's motion and dismissed the case without opinion.

■ The doctrine of res judicata—literally, "thing adjudged"—is a court-made collection of rules designed to ensure that the

same matter will not be litigated more than once. Today's case involves the branch of res judicata usually called "bar." Unlike the related rule of collateral estoppel or "issue preclusion," which merely prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case,[1] the doctrine of bar, or "claim preclusion," prohibits relitigation of an entire "cause of action" between the same parties or their privies, once a valid final judgment has been rendered in an earlier suit on the same cause of action.

If a plaintiff brings an action which proceeds to final judgment, his "cause of action" is said to be "merged" in the judgment if he wins and "barred" by it if he loses. This means that what was considered or should have been considered in the first action cannot form the basis of a subsequent action.

Note, *Developments in the Law—Res Judicata,* 65 Harv.L.Rev. 820, 824 (1952). The case now before us presents the question whether the judgment entered against Beegan in her first action against Schmidt bars her from bringing this second case.

In *Kradoska v. Kipp,* Me., 397 A.2d 562, 565 (1979), we summarized the doctrine of bar as it has evolved in this state. The rule, we said,

has been applied chiefly in the interests of judicial economy to bar relitigation of a cause of action that has already been resolved by a valid prior judgment; the scope of the bar extends to all issues "tried or that might have been tried" in the prior action. *Bray v. Spencer,* 146

Me. 416, 418, 82 A.2d 794, 795 (1951). . . . In order for the doctrine to be applied, the court must satisfy itself that 1) the same parties, or their privies, are involved; 2) a valid final judgment was entered in the prior action; and 3) the matters presented for decision were, or might have been, litigated in the prior action.

The case now before us easily satisfies the three conditions set forth in *Kradoska.* First, the same two parties are involved in this case as in the earlier action. Second, a dismissal for failure to come within an applicable statute of limitations is a "valid final judgment" for res judicata purposes.[2] Third, the issues presented for decision in the instant case could have been presented and decided in the prior action. It is true that the 1981 complaint contains factual allegations not made in 1980, allegations as to the formation and terms of two express contracts allegedly entered into by Dr. Schmidt with Beegan. But by their nature those facts must have been known to Beegan when she filed her 1980 complaint, and therefore her breach of contract claims could have been presented for decision at that time. Similarly, although the legal theory underlying both counts of the 1981 complaint, breach of express contract, differs from the theories relied upon in the 1980 complaint, it was hardly an unknown principle in 1980 and it could equally well have been relied upon in Beegan's original complaint. *See Woolley v. Henderson,* Me., 418 A.2d 1123, 1135 (1980); *Miller v. Dore,* 154 Me. 363, 148 A.2d 692 (1959).[3] Nor

---

1. For helpful explanations of the distinction between issue preclusion and claim preclusion, or collateral estoppel and bar, see *Cianchette v. Verrier,* 155 Me. 74, 85–90, 151 A.2d 502, 508–11 (1959) (applying collateral estoppel); *Restatement (Second) of Judgments* § 17 comments a, b, c (1982).

2. In *Kradoska v. Kipp,* Me., 397 A.2d 562, 567 (1979), a dismissal for want of prosecution was held to foreclose relitigation of the same cause of action because such a dismissal "operates as an adjudication on the merits" under M.R. Civ.P. 41(b)(3). By its terms, Rule 41(b)(3) also applies to dismissals for failure to comply with a statute of limitations. *See also Restatement*

*(Second) of Judgments, supra* note 1, § 19 reporter's note, at 168–69 ("The dismissal [on statute of limitations grounds] operates as a bar in the jurisdiction in which it is rendered, even if the plaintiff in the second action seeks to change his theory of recovery and to rely on a longer limitations provision").

3. It is true that *Woolley v. Henderson,* suggesting that suit may be brought against a medical practitioner for breach of an express contract "to effect a cure or achieve a particular result," 418 A.2d at 1135, was published only two weeks before Beegan filed her 1980 complaint. However, in 1959 *Miller v. Dore* had reversed a judgment for a plaintiff-patient in a contract

would the Maine Rules of Civil Procedure have prevented Beegan from incorporating the 1981 allegations and theory of recovery into her 1980 complaint. *See* M.R.Civ.P. 18(a). Beegan thus could easily have presented for decision in 1980 all of the issues she seeks to litigate by her 1981 complaint.

These conclusions do not end our inquiry, however; in a sense they are mere preliminaries to the issue at the heart of the present case. We have stated that Beegan *could* have incorporated all of the factual allegations and legal grounds for relief asserted in her 1981 complaint back in 1980. Still to be decided is whether she *should* have done so; whether her failure to assert those matters in 1980 precludes her from litigating them now. To put it another way, the key question here is whether Beegan's 1981 complaint presents the same "cause of action" that was presented and disposed of in her 1980 action. "The major problem raised by the principle of merger or bar is how much of what could have been considered in the first action, but was not, is also merged or barred—in other words, to what extent a party's present grievances were part of the 'cause of action' already sued on." Note, *supra,* 65 Harv.L.Rev. at 824.

■ We have acknowledged in an earlier case that "the slippery phrase 'cause of action' all but defies definition." *Kradoska, supra,* 397 A.2d at 568. *See also* McCaskill, *The Elusive Cause of Action,* 4 U.Chi.L.Rev. 281 (1937); 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.410, at 1154 (1982) ("What is a 'cause of action' for the purposes of res judicata cannot be determined with precision"). Recent Maine cases have accepted what is generally known as the transactional test or the "pragmatic concept" of a cause of action, however, and today we reaffirm our com-

mitment to that formula. *Kradoska,* 397 A.2d at 568, approved the definition of "cause of action" used by Professor Field and his collaborators: "The measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 18.1, at 360 (2d ed. 1970); *see also* Field & McKusick, *Maine Civil Practice* § 18.1, at 218 (1st ed. 1959). *Kradoska* was foreshadowed by *Warren v. Waterville Urban Renewal Authority,* Me., 290 A.2d 362, 367 (1972) ("the plaintiff's complaint asserted a claim for damages arising out of a single occurrence ... even though it described in separate counts different aspects of recoverable damages"), and was followed explicitly in *Griffin v. Celtic Life Insurance Co.,* Me., 447 A.2d 477 (1982). *Restatement (Second) of Judgments* § 24 (1982) uses the term "claim" instead of "cause of action," and in its black letter gives a lucid explanation of the dimensions of a claim for res judicata purposes:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Other courts and commentators state the proposition differently,[4] but all who advo-

---

case against her doctor on other grounds without even hinting that an action for breach of an express contract for medical services was intrinsically improper. In any event, Beegan could at any time prior to final judgment in the first suit have amended her complaint to allege

an express contract, provided she had leave of the court, which M.R.Civ.P. 15(a) directs "shall be freely given when justice so requires."

**4.** *See, e.g., Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.1977), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1979)

cate the transactional test for a cause of action agree on its appropriateness in serving the purposes of the res judicata rule.

Maine cases have always acknowledged that the doctrine of res judicata is justified by concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants.[5] The transactional test for a cause of action best advances those goals.[6] Requiring a plaintiff to pursue all rights he may have against a given defendant that grow out of the "transaction or series of transactions" from which his suit arises promotes judicial economy and the public perception of the stability and finality of court decisions. It eases both the financial and psychological burdens on a defendant, who can rest assured that no one will sue him more than once over the same incident or occurrence. And it is fair to the plaintiff, as well: He as well as the defendant will benefit economically—by saving counsel fees and other litigation expenses—if he consolidates as many of his factual allegations and legal theories as possible

into one lawsuit. And the rules that have governed civil litigation in Maine since December 1, 1959, provide the plaintiff, as well as the defendant, with "ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined." [7] *Restatement (Second) of Judgments, supra,* § 24 comment a, at 198. The following summary of the pertinent features of a modern procedural system accurately describes litigation in the Maine courts under the Maine Rules of Civil Procedure:

> It [a modern set of rules] permits the presentation in the action of all material relevant to the transaction without artificial confinement to any single substantive theory or kind of relief and without regard to historical forms of action or distinctions between law and equity. A modern system allows allegations to be made in general form and reads them indulgently; it allows allegations to be mutually inconsistent subject to the

("it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies"); *Reiter v. Universal Marion Corp.,* 299 F.2d 449, 452 (D.C.Cir.1962) ("the substantial and determinative facts of the two cases [must] not [be] materially different"); C. Clark, *Code Pleading* 137 (2d ed. 1947) ("The extent of the cause is to be determined pragmatically by the court, having in mind the facts and circumstances of the particular case"); Schopflocher, *What is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata?,* 21 Ore.L.Rev. 319, 323 (1942) (cause of action is a "set of facts which, according to human experience and usage and trial convenience, may fairly be deemed a unity, and which, if true, under any rule of the substantive law whatsoever, justifies plaintiff's claim for relief"); Note, *supra,* 65 Harv.L.Rev. at 825 ("the operative facts are the same in both actions").

**5.** *See Kradoska, supra* note 2, 397 A.2d at 567 ("Judicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings"); *Pillsbury v. Kesslen Shoe Co.,* 136 Me. 235, 238, 7 A.2d 898, 899 (1939) ("It is against public policy that controversies should not have an end; the public should not be called on to bear the expense of two trials where one will suffice. Nor should parties be called on to pay the bills for two suits where only one is necessary"); *Emerson*

*v. Lewiston, Augusta & Waterville St. Ry.,* 116 Me. 61, 66, 100 A. 3, 4 (1917) ("This doctrine is based on the legal maxims that, 'A man should not be twice vexed for the same cause' and that 'It is for the public good that there should be an end of litigation'"); *Foss v. Whitehouse,* 94 Me. 491, 497, 48 A. 109, 112 (1901) ("The prohibition is not only against twice recovering, but is against twice vexing. Its purpose is to protect the court as well as the defendant").

**6.** "Courts and the public have an interest, in addition to that of litigants, in a sound application of res judicata to the end that there be stability in a final judgment rendered on the merits and that repetitive litigation be avoided. In the main, a broad and practical concept of 'cause of action' will best promote that interest." 1B J. Moore & T. Currier, *supra,* at 1163.

**7.** Earlier Maine cases relied on a narrow, technical definition of "cause of action" tied to the stringent rules of common law pleading then in effect. *See, e.g., Emerson, supra* note 5, 116 Me. at 63, 100 A. at 3 ("The primary right belonging to the plaintiff, and the corresponding duty belonging to the defendant, and the delict or wrong done by the defendant, consisting in a breach of such primary right or duty, constitute a cause of action"). Since December 1, 1959, those early judicial pronouncements have been obsolete.

pleader's duty to be truthful. It permits considerable freedom of amendment and is willing to tolerate changes of direction in the course of litigation. Parties can resort to compulsory processes besides private investigations to ascertain the facts surrounding the transaction, thereby measurably avoiding surprise at the trial. The pretrial conference contributes to the same end of developing the whole case. The law of res judicata now reflects the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so. *Id.* Thus, the transactional test of a cause of action demands of the plaintiff nothing more than what is fair.

We have no doubt that Beegan's 1980 and 1981 complaints grow out of only one series of transactions. Both complaints allege essentially the same facts occurring over the same period of time: that Beegan went to Dr. Schmidt for dental work in the spring of 1975, that he was supposed to cure her dental diseases or at least prevent further decay, that he failed to do so, and that his failure resulted in further deterioration in Beegan's condition, ultimately requiring extensive remedial work and leading to related expenses and losses. The basic injury Beegan alleges to have suffered—the unnecessary worsening of her dental problems—is the same in both cases. The damages she requests are the same in both cases—or, to be more precise, the damages she requests in her 1981 complaint are merely a subset of those she demanded in 1980. Stripped of legal terminology, the essential duty Dr. Schmidt is alleged to have violated is the same in both cases: the duty to treat Beegan's teeth competently enough to prevent the injury she incurred. In fact, the only real difference between the two cases is that the 1981 complaint relies on a legal theory different from those relied on by the 1980 complaint. The additional factual allegations appearing in 1981 are merely the minimum necessary to show Beegan's right to rely on an express contract theory—allegations as to the formation and terms of the contracts claimed to have been entered into by the parties. All

of the factual allegations as to Dr. Schmidt's *wrongful* acts appear in both complaints. "[A] plaintiff seeking legal relief must plead all theories of recovery then available to him." *Kradoska, supra,* 397 A.2d at 569.

In *Kradoska,* a prior judgment was held to bar a later suit arising out of the same aggregate of operative facts, even though the second suit relied upon a legal theory not advanced in the first case, asked for relief different from that requested in the first case, and would have involved evidence different from the evidence relevant to the first case. The plaintiff in *Kradoska* was the daughter and one of the heirs of Stuart Farrington, who at the time of his death had been seized of four mortgaged parcels of land—referred to as parcels "A," "B," "C," and "D." In an earlier lawsuit, the plaintiff had sued her father's second wife Edna Kipp and the son of that second marriage, asking that she—the daughter—be allowed to redeem parcels "B" and "C" and that a constructive trust be imposed on parcel "A" for the benefit of Stuart Farrington's heirs. The complaint alleged that Kipp, who had purchased assignments of the mortgages on the four parcels after they were foreclosed following Farrington's death, had wrongfully refused to allow the plaintiff to redeem parcels "B" and "C," even though the plaintiff had tendered a sum equivalent to the principal, interest, and taxes then due on the parcels. The case was eventually dismissed for want of prosecution.

Fourteen years later, Kradoska sued the same defendants, claiming a fee interest in all four parcels of land on a theory of intestate succession and alleging that Kipp was never legally married to Farrington and thus had no rights to the land. She also alleged that Kipp had obtained the assignments of the mortgages on parcels "A," "B," and "C" by fraudulently representing to the mortgagees that she was Farrington's widow. Finally, Kradoska repeated her allegations that she had tendered a sum to Kipp to redeem parcels "B" and "C," but that Kipp had wrongfully

refused to allow her to redeem those parcels.

The Law Court held that Kradoska was barred from claiming any of the four parcels on an intestate succession theory, as that theory underlay her demand, in the first case, that a constructive trust be imposed on parcel "A." 397 A.2d at 567. "Having already brought a lawsuit claiming a portion of the estate on a theory of intestate succession, the plaintiff may not at this late date bring suit on the same theory for the remainder." 397 A.2d at 568. The court went on to hold that Kradoska could not maintain her fraud claim in the second suit—although no allegations as to Kipp's fraudulent conduct had been made the first time around—unless the plaintiff could show that she was unaware of the alleged fraud at the time the first case was brought. 397 A.2d at 568. If the plaintiff knew of the fraud originally, said the court, "it becomes apparent that the issue ... falls within the ambit of the prior judgment as a theory of recovery that 'might have been tried' in the prior suit." *Id.* The court emphasized that both cases sought "a common object—title to certain parcels of real estate," 397 A.2d at 569, and concluded:

> To allow Kradoska to litigate separately each theory of recovery would destroy the purpose of the doctrine of res judicata just as surely as would allowing her to litigate separately the same theory of recovery with respect to each parcel of land. A plaintiff who splits his cause of action either as to relief sought or as to theories of recovery will find that his entire cause of action has been merged into the initial judgment. The issues which should have been litigated initially cannot be litigated subsequently.

*Id.*

We recapitulate the complicated facts and reasoning of *Kradoska* here only to emphasize that the case we are deciding today is well within the established bounds of Maine res judicata doctrine. In *Kradoska,* the second suit involved factual allegations, legal theories and demands for relief different from those advanced in the first

suit. Beegan's present lawsuit, by contrast, asks for the same relief she requested earlier and makes no additional factual allegations as to the defendant's wrongful acts. The issues raised in her 1981 complaint both could and should have been presented in her 1980 case. She may not litigate them now.

The entry is:

Judgment affirmed.

All concurring.