## CONNECTICUT NATIONAL BANK

v.

## Calvin J. KENDALL.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 3, 1992.

Decided Dec. 3, 1992.

Stephen Chute, Portland, for appellant.

Graydon G. Stevens, Kelly, Remmel & Zimmerman, Portland, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Calvin J. Kendall appeals from a decision of the Supreme Court (Cumberland County, *Alexander, J.*), granting a summary judgment to Connecticut National Bank (the "Bank") in the bank's action to foreclose a mortgage and recover amounts due under an unsecured note; and a summary judgment to the Bank on Kendall's counterclaims alleging: (1) that the Bank violated the federal securities laws and (2) that the Bank is liable for negligent misrepresentation and nondisclosure. We affirm the Superior Court's order of foreclosure and its dismissal of Kendall's counterclaims based on principles of res judicata.

In July of 1987, Kendall borrowed $250,000 from the Bank in order to finance his purchase of two limited partnership interests recommended by Salisbury Financial Services, Inc., and its President, Mitchell Ford. Two hundred and twenty-five thousand dollars of the indebtedness was secured by a mortgage on real property owned by Kendall. After Kendall defaulted under the mortgage, the Bank commenced the present action in the Superior Court seeking foreclosure of the mortgage and recovery of the unsecured indebtedness.

While this case was pending in the Superior Court, Kendall commenced, in January of 1991, an action in the United States

District Court for the District of Maine by filing a ten-count complaint against the Bank, and seven other defendants, asserting violations of both federal and state securities laws, RICO, and various other common law causes of action, including negligence. Of particular importance to the present appeal are two counts included in the federal complaint: Count I, alleging that the Bank violated § 10(b) of the Securities Exchange Act of 1934; and Count X, alleging that the Bank was negligent in its dealings with Kendall.

Thereafter, Kendall amended his answer in the present state court action to include two counterclaims: (1) that the Bank violated § 10(b) of the Securities Exchange Act of 1934, and (2) that the Bank committed acts of negligent misrepresentation and nondisclosure.

On February 7, 1992, the Superior Court granted a summary judgment to the Bank on its complaint, and a summary judgment against Kendall on both counterclaims. · On appeal, Kendall argues that summary judgment was inappropriate because material issues of fact exist with respect to both the enforceability of the mortgage and his counterclaims.

The federal district court action proceeded to trial against some of the defendants, including the Bank and Mitchell Ford. At the close of the evidence, the court directed a verdict in favor of the Bank. The case against Ford proceeded to the jury, which rendered a verdict in favor of Ford on all counts. Final judgment was entered in favor of the Bank on September 25, 1992. *Kendall v. Connecticut National Bank,* No. 92–0077–B (D.Me. Sept. 25, 1992). Kendall's time to appeal the federal court decision has expired.[1]

As a result of the federal district court's final judgment, the Bank moved, on October 30, 1992, to supplement the record in the present action in order to assert the defense of res judicata. Kendall failed to file a timely response to the Bank's motion.[2] Therefore, Kendall "shall be deemed to have waived all objections to the motion." M.R.Civ.P. 7(c).

## I.

■ The doctrine of res judicata is a collection of court-made rules designed to ensure that the same matter will not be litigated more than once. *Beegan v. Schmidt,* 451 A.2d 642, 643–44 (Me.1982). Its application is justified by concerns for judicial economy, fairness to litigants, and the stability of final judgments. *Currier v. Cyr,* 570 A.2d 1205, 1208 (Me.1990). Res judicata may be divided into two branches: bar and merger.

> If a plaintiff brings an action which proceeds to final judgment, his "cause of action" is said to be "merged" in the judgment if he wins and "barred" by it if he loses. This means that what was considered or should have been considered in the first action cannot form the basis of a subsequent action.

*Beegan,* 451 A.2d at 644 (quoting Note, *Developments in the Law–Res Judicata,* 65 Harv.L.Rev. 820, 824 (1952)).

■ The doctrine of bar prevents the relitigation in a present action of all issues that were tried, or may have been tried, in a prior action if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters now present for decision were, or might have been, litigated in the prior action. *Currier,* 570 A.2d at 1208.

■ The case now before us easily satisfies the three conditions set forth in *Currier.* First, Kendall and the Bank are involved in both actions. The fact that Kendall is the defendant in the present state court action and was the plaintiff in the prior federal court action is a distinction

---

**1.** Rule 4(a)(1) of the Federal Rules of Appellate Procedure provides for thirty days within which · a party may file a notice of appeal with the district court clerk. That period expired on October 26, 1992.

**2.** Under Rule 75B(a) of the Maine Rules of Civil Procedure, "Any party intending to file a response shall do so within 7 days after service of the motion." Kendall's attorney was personally served on October 30, 1992.

without a difference. Second, a final judgment entered on a directed verdict is valid for res judicata purposes. *See* Restatement (Second) of Judgments § 19 comment h (1982); *see also Bhatnagar v. Mid–Maine Medical Center,* 510 A.2d 233, 236 (Me.1986) (federal district court's summary judgment is valid final judgment for res judicata purposes); *Caporino v. Lacasse,* 511 A.2d 445, 447–48 (Me.1986) (judgment in small claims court is given res judicata effect in subsequent district court action). Finally, the matters present for decision in the present action were, or might have been, litigated in the prior federal court action.

■ "Whether the matters presented for decision were or might have been litigated in the prior case depends upon whether the same 'cause of action' was before the court in the prior case." *Currier,* 570 A.2d at 1208. Maine has adopted the "transactional test" definition of a cause of action. Under this test, "the measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Beegan,* 451 A.2d at 645 (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 18.1, at 360 (2d ed. 1970)). A prior judgment bars a later suit arising out the same aggregate of operative facts even though the second suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, and involves evidence different from the evidence relevant to the first case. *Currier,* 570 A.2d at 1208; *Beegan,* 451 A.2d at 647; *Kradoska v. Kipp,* 397 A.2d 562, 569 (Me.1979).

■ In the present case, we have no doubt that Kendall's state court counterclaims and federal court complaint grew out of the same aggregate of operative facts. Kendall's claims in both state and federal court allege essentially the same facts occurring over the same period of time. Specifically, that the Bank, during negotiations with Kendall in 1987, encouraged him to purchase the risky limited partnerships being recommended by the President of Salisbury Financial Services,

Mitchell Ford, and therefore aided and abetted a primary violation of § 10(b) of the Securities Exchange Act of 1934. Furthermore, Kendall contends in both cases that the Bank was negligent in failing to investigate whether these investments would provide sufficient income to repay the loans. Finally, the basic injury Kendall alleges to have suffered—financial damage caused by the imprudent investments—is the same in both cases.

Having determined that the operative facts of the two actions are the same, we conclude that Kendall's federal court action involved the same cause of action as the counterclaims asserted in the present action. Therefore, Kendall's counterclaims must be dismissed as they are barred by the res judicata effect of the federal court judgment. *See Bhatnagar,* 510 A.2d at 236 (res judicata properly granted where plaintiff sought to raise in Superior Court claims identical to those litigated in federal district court); *Griffin v. Celtic Life Insurance Co.,* 447 A.2d 477, 477–78 (Me.1982) (where both complaints allege essentially the same cause of action the later complaint is barred by the res judicata effect of the judgment in the prior action).

II.

Kendall also argues that the Superior Court erred as a matter of law in concluding that he was in default under the terms of the mortgage and granting a summary judgment to the Bank in the foreclosure action. In particular, Kendall asserts that the poorly drafted mortgage raises multiple questions of fact in that the description of the mortgaged property is insufficient and the parties are misidentified. While the mortgage initially refers to Kendall and the Bank as mortgagor and mortgagee, respectively, the terminology is then changed to grantor and grantee. Thereafter, the parties are mistakenly switched and the Bank is referred to as the grantor and Kendall as the grantee. The Bank, after conceding that the mortgage was poorly drafted, argues that there exists no genuine issue of fact concerning the proper interpretation of the mortgage, and, there-

fore, summary judgment was appropriately granted.

■ Summary judgment may be granted when there exists no genuine issue of material fact requiring a trial and any party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c). We review the Superior Court's decision to grant summary judgment for errors of law, viewing the record in the light most favorable to the party against whom the judgment has been granted. *H.E.P. Development Group, Inc. v. Nelson,* 606 A.2d 774, 775 (Me.1992); *Diversified Foods, Inc. v. First National Bank of Boston,* 605 A.2d 609, 612 (Me. 1992). Contrary to Kendall's contention, the mortgage, despite its inadequacies, is susceptible of only one interpretation. Moreover, Kendall fails to suggest any other reasonable interpretation of the mortgage. In light of the circumstances surrounding the entire transaction and the obvious intentions of the parties, it is clear that both parties intended that Kendall grant a mortgage to the Bank. Therefore, the Superior Court did not err in finding that Kendall was in default under its terms. *See Combustion Engineering v. Miller Hydro Group,* 577 A.2d 1186, 1189 (Me.1990).

The entry is:

Judgment affirmed.

All concurring.