STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

FEB 9 2000

RECEIVED AND FILED
Susan Guillette, Clerk

STATE OF MAINE
KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-99-001
JRA KNO-2/9/2000

DONALD L. GARBRECHT
LAW LIBRARY

FEB 11 2000

PATRICIA LEWIS, CHARLES NEIDIG,
and DOROTHY NEIDIG,

      Petitioners

v.

TOWN OF ROCKPORT and MAINE
COAST ARTISTS,

      Respondents

DECISION AND ORDER

This matter is before the court on petitioners' M.R. Civ. P. 80B appeal of the January 6, 1999 decision of the Rockport Zoning Board of Appeals which affirmed the findings of the Rockport Code Enforcement Officer regarding zoning violations of a building owned by respondent Maine Coast Artists.

## I. Facts and Procedural History

The dispute between the parties in this case has a long and complicated history. Petitioner Patricia Lewis owns two lots of land in the town of Rockport, one of which is rented by petitioners Charles and Dorothy Neidig. The property rented by the Neidigs abuts the property owned by respondent Maine Coast Artists (hereinafter MCA). MCA operates a non-profit art gallery on its property which is a conforming use for the property under the Rockport Zoning Ordinance. However, MCA's property is a grandfathered nonconforming lot for several reasons: (1) the lot size is less than the required 12,000 square feet, (2) the building does not meet the

minimum sideyard setback requirement of six feet, and (3) the building exceeds the maximum height requirement of 34 feet. R. Tab 7 p. 58-59.

On November 10, 1993 MCA applied to the Rockport Zoning Board of Appeals (hereinafter ZBA) for a "special exception" to rebuild its stairtower and to build a new elevator enclosure in order to bring the building into compliance with the Americans with Disabilities Act. R. Tab 5-1. On December 8, 1993 the ZBA granted MCA's request for a special exception to build the stairwell and elevator shaft. R. Tab 5-2 p. 3. The Rockport CEO issued a building permit on June 8, 1996 which authorized the construction. Three days later the Town enacted a new Land Use Ordinance and a new Building Officials and Code Administrators Code (hereinafter BOCA Code).

Following the issuance of the building permit, MCA made several revisions to its plans for modification of its building and on September 18, 1996 it filed an application to "amend" its 1993 special exception based on these modifications. R. Tab 5-6. On October 9, 1996 the ZBA granted MCA's request. R. Tab 7 p. 58-65. The parties dispute whether this second special exception application was to amend the 1993 special exception based on changes in the planned renovations or whether it was a new application for a new special exception. Petitioner Patricia Lewis then filed a Rule 80B appeal from the ZBA's decision to grant the second special exception.

MCA asserts that on November 4, 1996, in reliance on the June, 1996 building permit, they hired Sewall Company, a general contractor, to begin construction on

2

their building. MCA also claims that they, as well as Sewall, relied on this same permit in tearing down a wall and part of the foundation that same month for which Sewall was paid $49,495.

On November 22, 1996 Lewis filed a boundary dispute action against MCA. The Superior Court entered judgment for Lewis on her claim of adverse possession concerning the boundary between MCA and her property on August 29, 1997.

On November 27, 1996 MCA sought and received site plan approval from the Planning Board of its "1993 and 1996 Plans for an addition of an elevator to permit handicapped access, rebuilding staircase and general renovations." R. Tab 7 p. 72-73, 78-79. On December 2, 1996 MCA applied for and was granted a new building permit. R. Tabs 5-11 and 5-12. Lewis appealed the Planning Board's Site Plan approval and the December, 1996 building permit to the ZBA in January, 1997. Her appeal was denied and she filed her second Rule 80B appeal on February 24, 1997.

The Superior Court consolidated Lewis' two Rule 80B appeals and affirmed both decisions of the ZBA in October, 1997. Lewis appealed to the Law Court which reversed the Superior Court, finding, in part, that the ZBA erred in granting the 1996 special exception and the December, 1996 building permit because they violated the zoning ordinance by increasing the building's nonconformity. *Lewis v. Town of Rockport*, 1998 ME 144, ¶ 13, 712 A.2d 1047, 1050. The matter was remanded to the Superior Court for entry of judgment in favor of Lewis on her appeal of the ZBA's "grant of a special exception and the CEO's grant of the second building permit." *Id.* at 1050.

On November 10, 1998 petitioners filed an action, *Lewis v. Town of Rockport*, AP-98-014, against the Town of Rockport alleging, among other claims, that the Rockport Code Enforcement Officer (hereinafter CEO) had failed or refused to take any enforcement action against MCA regarding their building's nonconformance with the ordinance.[1] Three days later the CEO issued MCA a Notice of Violations which listed three violations that needed to be corrected in order for the building to be in compliance with the ordinance. Petitioners appealed this decision of the CEO to the ZBA claiming that the notice omitted many of the "most important dimensional nonconformities on the MCA property." *Id.* at 2. The ZBA affirmed the CEO's decision on January 6, 1999 and the petitioners filed this Rule 80B appeal.

Petitioners argue here that, as a result of the Law Court's decision in *Lewis*, MCA was left without any valid permits authorizing the expansion of its building. Therefore, they further argue that in determining the extent of the building's nonconformance, the CEO was required to compare the present structure with the building prior to all of the renovations. If the CEO had done so, petitioners assert that many more violations would have been found than the three listed by the CEO in the Notice of Violations. The respondents reply that the 1993 special exception and June, 1996 building permit are valid, noting that the petitioners never appealed the granting of either of them to the ZBA. Therefore, they assert that the CEO properly determined the extent of the building's nonconformity based on a

---

[1] This action is still pending. On July 19, 1999 the court accepted a stipulated dismissal of Count II of the complaint which sought an order directing the Town of Rockport to immediately enforce the Land Use Ordinance by ordering MCA to correct the zoning violations on their property, including those listed in a letter dated August 4, 1998 from the CEO to MCA.

comparison of the existing building with the design of the building in the unchallenged 1993 special exception and the June, 1996 building permit. Based on this comparison, respondents argue that the Notice of Violations includes all of the building's violations and therefore the ZBA's decision sustaining the action of the Rockport CEO was proper and should be affirmed by this court.

## II. Discussion

Ultimately, this court needs to decide whether the CEO properly measured the extent of MCA's building's nonconformance with the zoning ordinance by comparing the existing building with the building as authorized in the 1993 special exception and the June, 1996 building permit or whether he should have determined the extent of nonconformity by comparing the existing building to the building as it existed prior to all renovations. This decision depends on the current status of the 1993 special exception and the June, 1996 building permit considering (1) the Law Court's decision in *Lewis* and (2) the fact that a second special exception and second building permit were issued for the same project. The court must therefore decide whether principles of res judicata bar the respondents' reliance on the 1993 special exception and the June, 1996 building permit because of previous litigation over permits affecting this building. If res judicata is not applicable, then the court must determine whether MCA lost its rights under the 1993 special exception and the June, 1996 building permit in some other manner such as expiration, waiver, or abandonment.

5

## A. Res Judicata

Petitioners argue that res judicata bars respondents' reliance on the 1993 special exception and the June, 1996 building permit as authorization for the building's renovations and expansion. They assert that if the 1993 special exception and June, 1996 building permit provided the necessary authorization for the renovations and expansion of MCA's building, then this argument should have been raised in the *Lewis* case where the Superior Court and the Law Court were considering the propriety of MCA's construction under the 1996 special exception and the December, 1996 building permit. Petitioners' theory is that even if the expansion were prohibited under the 1996 special exception and the December, 1996 building permit, the respondents should have argued in the prior litigation that the petitioners' failure to appeal the issuance of the 1993 special exception and the June, 1996 building permit gave MCA the right to carry out the expansion to the extent authorized in those approvals. Because the respondents failed to raise this argument in the prior action, the petitioners argue that the respondents are now barred from relying on the 1993 special exception and the June, 1996 building permit in seeking to maintain their expansion because res judicata bars them from asserting that claim now.

"The doctrine of res judicata 'is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once.'" *Camps Newfound/Owatonna Corp. v. Town of Harrison*, 1998 ME 20, ¶ 11, 705 A.2d 1109, 1113 (quoting *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595, 599).

6

It "prevents a litigant from splitting the litigant's claim and pursuing it 'in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim' that the litigant had a reasonable opportunity to argue in the prior action." *Id.* ¶ 12, 705 A.2d at 1114 (quoting *Kradoska v. Kipp*, 397 A.2d 562, 567 (Me. 1979)). "Unlike the related rule of collateral estoppel or 'issue preclusion,' which merely prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case, the doctrine of bar, or 'claim preclusion,' prohibits relitigation of an entire 'cause of action'. . . ." *Id.* ¶ 11, 705 A.2d at 1113 (quoting *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me. 1982)). Res judicata, or claim preclusion, can be asserted to prevent a plaintiff from splitting a cause of action and prosecuting each of its parts in separate lawsuits, *id.* ¶ 12, 705 A.2d at 1113, and it can be asserted to prevent a defendant from splitting his defenses to a particular cause of action. *Paul v. Thorndike*, 97 Me. 87, 89, 53 A. 877 (1902). Claim preclusion bars the relitigation of a claim if: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Camps Newfound/Owatonna Corp.*, 1998 ME 20, ¶ 11, 705 A.2d at 1113 (quoting *Machias Sav. Bank*, 1997 ME 20, ¶ 11, 689 A.2d at 599).

### 1. Identity of parties

In the instant case, there is no dispute that the parties currently before this court are the same parties that were involved in the prior litigation. *See* R. Tab 7 pp. 52 and 82 (Complaints filed in the prior Rule 80B appeals list petitioner as Patricia

Lewis and respondents as Maine Coast Artists and the Inhabitants of the Town of Rockport).

### 2. Valid final judgment

MCA argues that there has not been a valid final judgment which could "limit this case concerning the extent of violations." MCA's Brief p. 8. They argue that the Law Court in *Lewis* "remanded the matter back to Superior Court which in turn remanded it to the Town."[2] Upon remand to the Town, MCA argues that the CEO determined for the first time what zoning violations existed on MCA's property so that the Law Court's decision in *Lewis* is not a valid final judgment on that issue. They further argue that the Law Court's decision specifically considered the 1996 special exception and the December, 1996 building permit so it cannot operate as a valid final judgment regarding the June, 1996 building permit.

This argument confuses the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). It is argued that if the Law Court in *Lewis* did not actually consider and decide an issue, that decision cannot operate as a valid final judgment as to that issue. This argument is based on principles of collateral estoppel - not res judicata. "Collateral estoppel bars [a party] from asserting an issue of fact or law that was *actually litigated* on the merits and determined by a valid final judgment in a prior action if the issue was essential to the judgment." *Sargent*

---

[2] The Law Court remanded the matter to the Superior Court to enter judgment for petitioner. The Superior Court complied with this order on June 16, 1998 when it entered this order: "Judgment is entered for the Plaintiff, Patricia Lewis, in both cases, on her appeal of the board's grant of a special exception and the CEO's grant of the second building permit." R. Tab 7. p. 96. Contrary to MCA's argument, the Superior Court did not remand the matter back to the Town.

*v. Buckley*, 1997 ME 159, ¶ 6, 697 A.2d 1272, 1274 (emphasis added). Conversely, res judicata or claim preclusion bars the relitigation of a claim only if "the matters presented for decision in the second action *were, or might have been litigated* in the first action." *Camps Newfound/Owatonna Corp.*, 1998 ME 20, ¶ 11, 705 A.2d at 1113 (emphasis added). Consequently, the fact that the Law Court did not actually consider or decide the issues regarding the extent of nonconformity or the June, 1996 building permit does not mean that that decision is not a valid final judgment. Whether or not an issue was litigated, although pertinent to other elements of res judicata and collateral estoppel, is unrelated to the determination of whether there is a valid final judgment. The Law Court's decision in *Lewis* is a valid final judgment because that decision effectively ended the prior litigation. *See Camps Newfound/Owatonna Corp.*, 1998 ME 20, ¶ 13, 705 A.2d at 1114 (noting that parties did not contest that the prior decision by the Law Court was a valid final judgment). Accordingly, MCA's argument that the Law Court's decision in the earlier *Lewis* case was not a final judgment cannot prevail.

### 3.     Matters which were or might have been litigated

In determining whether the matters presented for decision in the instant action were or might have been litigated in the prior action, this court must consider "whether the same 'cause of action' was before the court in the prior case." *Camps Newfound/Owatonna Corp.*, 1998 ME 20, ¶ 11, 705 A.2d at 1113 (quoting *Connecticut Nat'l Bank v. Kendall*, 617 A.2d 544, 547 (Me. 1992)). The Law Court has adopted a "transactional test" to define a cause of action:

[T]he measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial. A prior judgment bars a later suit arising out [of] the same aggregate of operative facts even though the second suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, and involves evidence different from the evidence relevant to the first case.

*Id.* The Law Court has made the following comments regarding this transactional test:

Maine cases have always acknowledged that the doctrine of res judicata is justified by concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants. The transactional test for a cause of action best advances those goals. Requiring a plaintiff to pursue all rights he may have against a given defendant that grow out of the "transaction or series of transactions" from which his suit arises promotes judicial economy and the public perception of the stability and finality of court decisions. It eases both the financial and psychological burdens on a defendant, who can rest assured that no one will sue him more than once over the same incident or occurrence. And it is fair to the plaintiff, as well: He as well as the defendant will benefit economically--by saving counsel fees and other litigation expenses--if he consolidates as many of his factual allegations and legal theories as possible into one lawsuit. And the rules that have governed civil litigation in Maine since December 1, 1959, provide the plaintiff, as well as the defendant, with "ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined."

*Beegan v. Schmidt*, 451 A.2d 642, 646 (Me. 1982) (citations omitted). In making these comments the Law Court noted that "a broad and practical concept of 'cause of action' will best promote" the interest of the courts, public and litigants "in [the] sound application of res judicata to the end that there be stability in . . . final judgment[s] rendered on the merits and that repetitive litigation be avoided." *Id.* at 646 n.6.

As defined by the Law Court, a cause of action is "the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Camps Newfound/Owatonna Corp.*, 1998 ME 20, ¶ 11, 705 A.2d at 1113. Both the prior and current litigation between these parties arise out of the same set of general facts - namely MCA's expansion of its building and whether that expansion complied with the Rockport Land Use Ordinance. The special exceptions and building permits issued with respect to that expansion are a "series of transactions" growing out of the MCA expansion. In this context, it would have been easy and convenient for the respondents to have argued in the first case that even if the expansion was not authorized by the 1996 special exception and the December, 1996 building permit, it was authorized by the 1993 special exception and the June, 1996 building permit because the petitioners failed to appeal the decisions granting those earlier approvals.[3]

The respondents argue that they were not required to raise the issue of the authorization for the expansion under the 1993 special exception and the June, 1996 building permit because petitioner Lewis was precluded from challenging those approvals as the result of her failure to timely appeal their issuance. Petitioner Lewis did attempt to challenge the issuance of the first building permit before the

---

[3] *Cf, Pacific Greyhound Lines v. Brooks*, 220 P.2d 477 (Ariz. 1950) ("If Sun Valley [Bus Lines] relied upon certificate No. 5234 as authority for its operations in the territory heretofore enjoined in [the prior action] it had the bounden duty to come forward and assert it in that suit. Having failed to do so, the judgment in that case has become final and conclusive as to all matters therein decided as well as all matters and issues that were germane or could have been decided . . . Sun Valley was then relying upon certificates numbered 5278, 5295 and 5296 as authority for its operations. It certainly would create an intolerable situation for it to now be permitted to say it was really operating in that territory under certificate No. 5234.").

11

Law Court. However, the Law Court found that because Lewis did not appeal that action to the ZBA, that issue was not properly before it. *Lewis*, 1998 ME 144, ¶ 7 n.2, 712 A.2d 1047, 1049. This circumstance weighs in favor of requiring MCA to have raised the validity and the significance of the 1993 special exception and the June, 1996 building permit in the first action. If they had, petitioner Lewis might have had no defense to the validity of those approvals and MCA could have prevailed on that issue, thereby providing authorization for a large portion of the expansion of their building. *See* R. Tab 10 (sketch plan showing modifications to the building under both sets of approvals granted in this case); R. Tab 5-6 (decision granting 1996 special exception noting that the amendments to the 1993 special exception are "minor").

In adhering to the Law Court's admonition that "a broad and practical concept of 'cause of action' will best promote" the interest of the courts, public and litigants, *Beegan*, 451 A.2d at 646 n.6; this court concludes that respondents are barred by res judicata from relying on the 1993 special exception and the June, 1996 building permit as authorization for the expansion of the MCA building because they failed to raise this argument in the prior litigation. Consequently, MCA is without any valid approvals for the expansion of their building and the building's nonconformity with the zoning ordinance must be measured by comparing the existing building to the building prior to all renovations.

## B.    Waiver or Abandonment

Even if principles of res judicata cannot be interpreted to bar the respondents' "defense," this court finds that respondents have waived or abandoned their rights under the June, 1996 building permit.  Under Maine law, if a municipality grants a building permit in reliance on sketches or other graphical representations of the project, the permit holder may only build the project represented in the plans and deviations from that plan are not allowed.  *See City of Hallowell v. Morais*, 629 A.2d 55 (Me. 1993).  Thus, MCA was required to seek a new building permit when they made changes to their renovation plans.  When MCA obtained the December, 1996 building permit, they waived or abandoned their plans as represented in the June, 1996 building permit and their right to conduct renovations on the property was then defined by the new building permit.[4]  Consequently, when the Law Court invalidated the December, 1996 building permit, MCA was left without a valid building permit authorizing the expansion of its building.  Therefore, even if res judicata does not bar the respondents from relying on the June, 1996 building permit, they are precluded from relying on that permit in this action as the result of their waiver or abandonment of the rights they had under that permit.

---

[4] *See Gagnon v. Planning Comm'n of the City of Bristol*, 608 A.2d 1181, 1183 (Conn. 1992) (finding that approval of a second subdivision application "controls the applicants' right to develop the parcel" and that, as a result, plaintiff's appeal of the decision to grant the first subdivision application was rendered moot); *Baumer v. Zoning Comm'n of the Borough of Newtown*, 697 A.2d 704, 706 (Conn. 1997) (relying on *Gagnon* and finding that plaintiff's appeal of an initial site plan approval was rendered moot when a revised site plan was approved by the Zoning Commission and that approval was not appealed).

### III. Conclusion

Therefore the entry will be:

Petitioners' appeal is GRANTED. The matter is remanded to the Rockport CEO for a determination of the nonconformity of the Maine Coast Artist's building with the Rockport Land Use Ordinance in accordance with this decision.

Dated: February 8, 2000

John R. Atwood
Justice, Superior Court

STATE OF MAINE
nox. S.S., Clerk's Office
SUPERIOR COURT
APR 13 2000

DONALD L. GARBRECHT
LAW LIBRARY

APR 14 2000

STATE OF MAINE
KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-99-001
JRA•KNO•4/13/2000

PATRICIA LEWIS, CHARLES NEIDIG,
and DOROTHY NEIDIG,

Petitioners

v.

TOWN OF ROCKPORT and MAINE
COAST ARTISTS,

Respondents

DECISION AND ORDER

This matter is before the court on respondent Maine Coast Artists' M.R. Civ.

P. 52 motion for further findings of fact and conclusions of law.

I.    Facts and Procedural History

On February 8, 2000, this court issued an order granting petitioners' M.R. Civ.

P. 80B appeal and remanding the matter to the Rockport CEO for a determination of

the nonconformity of respondent Maine Coast Artists' (MCA) building with the

Rockport Land Use Ordinance in accordance with that decision.    The court

determined that "MCA is without any valid approvals for the expansion of their

building and the building's nonconformity with the zoning ordinance must be

measured by comparing the existing building to the building prior to all

renovations."  Order at 12.  Thereafter, MCA filed a Rule 52 motion for additional

findings of fact and conclusions of law and amendment of the decision and order

asserting that the court failed to "address the petitioners' appeal of the CEO's and the

ZBA's quantitative conclusions concerning the extent of violations of the Rockport Land Use Ordinance."

## II. Discussion

This court determined in its order that the respondents were barred from relying on the 1993 special exception and the June, 1996 building permit as authorization for the building's renovations and expansion on grounds of res judicata and waiver/abandonment. The CEO's and ZBA's decisions regarding the extent of the building's nonconformity with the ordinance were based on a comparison of the existing building with the design of the building in those approvals. By finding that respondents were precluded from relying on those approvals, the petitioners' appeal of the CEO's and ZBA's decisions was rendered moot. Specifically, this court was not required to review the violation determinations made by the CEO and the ZBA because those determinations were made in reliance on a set of approvals which this court found could not be relied on as authorization for the construction. Stated differently, this court would have been required to review the violation determinations made by the CEO and the ZBA only if it found that the 1993 special exception and the June, 1996 building permit authorized the construction and could be relied upon by the respondents' at this point in the litigation. By finding that respondents were barred from relying on those approvals, there was no cause for this court to review the CEO's and the ZBA's decisions. Therefore, MCA's Rule 52 motion seeking, in effect, to have this court review those decisions must be denied.

2

Therefore the entry will be:

Respondent MCA's M.R. Civ. P. 52 motion is DENIED.

Dated: April 12, 2000

John R. Atwood
Justice, Superior Court

3

Date Filed __1/25/99__ _____Knox_____ Docket No. __AP-99-001__ ‗

‗‗‗‗‗‗‗‗‗‗‗‗ County

Action ____Rule 80B____

DONALD L. GARBRECHT
LAW LIBRARY

APR 14 2000

PATRICIA LEWIS, CHARLES NEIDIG and
DOROTHY NEIDIG                         vs. THE TOWN OF ROCKPORT and MAINE COAST ARTISTS

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John C. Bannon, Esq. | Clifford H. Goodall, Esq. (MAINE COAST ARTIST |
| P. O. Box 9785 | 45 Memorial Circle |
| Portland, Maine 04104-5085 | Augusta, Maine 04330-6432 |
| | 622-3693 |
| | |
| | Paul L. Gibbons, Esq. (ROCKPORT) |
| | P.O. Box 616 |
| | Camden, ME 04843-0616 |
| | 236-3325 |

Date of
Entry

1/26/99    On 1/25/99  Complaint and Complaint Summary Sheet filed