STATE OF MAINE
KENNEBEC, SS.

DISTRICT COURT
CIVIL ACTION
DOCKET NO- CV-16-148

DEBORAH COTE,
       Plaintiff

**DECISION AND JUDGMENT**

V.

CYNTHIA and MICHAEL
MIVILLE,
       Defendants

## INTRODUCTION

This matter is before the court for resolution on the Plaintiff's Complaint, following a one-day bench trial held on December 13, 2017. The court heard testimony from the following witnesses: Deborah Cote; Michael Miville; Matt Morrill, and; Cynthia Miville. The court also received into evidence Defendants' Exhibits 1-21. The court also received into evidence the deposition testimony of Ms. Cote taken on October 12, 2016.

This is the second time within the past 2-3 years that these same parties have been involved in litigation over a 30 foot right of way on the property of Plaintiff Deborah Cote, and which the Defendants, Michael and Cynthia Miville, have the right to use "for all ordinary purposes of travel." The issue that has divided the

parties, and that has now generated two separate lawsuits, is whether and to what extent the Defendants are legally entitled to maintain the right of way, including mowing the grass on the Plaintiff's property.

Based upon the testimony presented at trial and the exhibits admitted into evidence, the court makes the following findings of fact.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

The parties are adjacent property owners on Little Cobbossee Avenue in Winthrop. The Mivilles reside at 26 Little Cobbossee Ave., while Ms. Cote owns the property at 23 Little Cobbossee Ave.

The Mivilles obtained their property through a warranty deed dated June 8, 1984, and recorded at Book 2690, Page 221 of the Kennebec County Registry of Deeds. (Defs.' Exh. 1). Ms. Cote (formerly Deborah Mott) obtained title to her property by means of a quitclaim deed dated February 7, 2008, recorded at Book 9635, Page 286. (Exh. 2). The warranty deed to the Mivilles also included a right of way described as follows:

> Together with a right of way in common with others for all ordinary purposes of passage over the 15 foot right of way first above mentioned, and together with a right of way for all ordinary purposes of travel,

---

[1] Following the presentation of evidence, the parties made closing arguments, but did not wish to submit further written arguments. Rather, the parties requested the court to review their submissions filed in connection with their respective motions for summary judgment, which were denied on July 14, 2017. (Duddy, J.).

2

> over a 30 foot strip of land running from the northerly line of said 15 foot right of way first above mentioned to Little Cobbossee Lake, said 30 foot right of way being located over a strip whose boundary is an extension northerly of the easterly line of the parcel of land above described.

*Defs.' Exhibit 1* (emphasis supplied).

The quitclaim deed to Ms. Cote contains the following language pertaining to the right of way:

> Subject to a 30' right of way extending from Little Cobbossee Avenue to Little Cobbosseecontee Lake as shown on the Town of Winthrop Tax Map 54.

*Defs.' Exhibit 2*.

The parties do not dispute the location of the 30' right of way. Nor has Ms. Cote alleged in this action that the Mivilles have gone beyond the 30' right of way. Rather, the dispute is the extent of the Mivilles' authority to maintain the right of way and, specifically, whether they are entitled to mow the grass on the right of way at all. An illustration of the right of way in question is depicted in Defendants' Exhibit 9. Defendants' Exhibits 10-13 and 17-21 are photographs showing the right of way at various times of the year and in various conditions.

Defendant Michael Miville has been mowing the grass on the right of way since he and his wife first became owners of their property in 1984. The Mivilles apparently had no issues with Ms. Cote's predecessors in title regarding the mowing of the grass on the

right of way. Sometime after Ms. Cote became the owner of the property at 23 Little Cobbossee Avenue in 2008, however, disputes arose between her and the Mivilles about the use and/or maintenance of the right of way. In 2012, Ms. Cote placed brush and debris along the right of way. *See Defs.' Exhibits 10 and 11*. At some point in 2014 or 2015, Ms. Cote place two trailers at the end of the right of way near the lake that significantly narrowed the area of travel along the right of way. *See Defs.' Exhibits 12 and 13*.

Ms. Cote denied that the trailers obstructed the right of way but the Mivilles felt otherwise. As a result, in June 2015 the Mivilles sued Ms. Cote in the Kennebec County Superior Court for injunctive and declaratory relief, asserting that she had "vindictively blocked useful access to the right of way by placing two (2) large trailers across its width." *Defs.' Exhibit 3, ¶ 5. See Miville v. Cote*, Ken Super. Ct. Docket No. CV-15-108. The complaint sought an order against Ms. Cote "to cease any activity which results in interference with plaintiffs' ability to use the right of way," and a declaration that she could not "block the right of way or otherwise act in a manner which results in interference with the plaintiffs' rights to use said right of way." *Id*. The complaint did not address, or seek relief from the court, on the issue of whether the Mivilles were entitled to cut the grass on the right of way.

4

Ms. Cote answered the complaint and asserted two counterclaims for trespass pursuant to 14 M.R.S. §§7551-B (Count 1) and 7552 (Count 2). Those counterclaims alleged that the Mivilles had caused damage to Ms. Cote's "property by removing erosion control materials," and by "cutting or otherwise removing wood or wood products including but not limited to trees and brush ...." *Defs.' Exhibit 4.* The counterclaims did not seek a declaration of the rights of the parties with respect to the right of way.

The parties reached a relatively prompt resolution of their dispute in the first lawsuit. A "Settlement Agreement" was executed by all the parties in August 2015.[2] The Agreement recites that: "WHEREAS a dispute has arisen as to the use and maintenance of a thirty (30) foot right of way . . . across the western boundary of defendant's [Ms. Cote's] property to the shore of Little Cobbossee Lake for the benefit of the plaintiffs [Mivilles'] property," the parties "wish to resolve their dispute amicably and implement erosion control measures according to a plan made by the Friends of the Cobbossee Water Shed." *Defs. Exhibit 5.*

The terms of the settlement consisted of the following: (1) the cost of implementing the erosion control plan would be equally shared; (2) "Neither party will impede, restrict or otherwise interfere

---

[2] The Settlement Agreement indicates that it was signed by the Mivilles on August 12, 2015. Ms. Cote's signature is undated, other than "August___, 2015." *See Defs. Exhibit 5.*

with the property rights of the other as set out in their respective deeds not [sic] attempt to expand or constrict those property interests;" (3) all claims and counterclaims were to be dismissed with prejudice; (4) for a beach of the settlement agreement, the "substantially prevailing party" is entitled to recover reasonable attorney fees and costs.

The settlement agreement is silent on the issue of mowing the grass in the right of way. The court finds that during the negotiations between Ms. Cote's attorney and the attorney for the Mivilles (Attorney Winchester), efforts were made by the latter to incorporate language into the settlement agreement that would expressly recognize the Mivilles' right to cut the grass in the right of way on Ms. Cote's property. These efforts were rejected by Ms. Cote.[3] As a result, the agreement as finally executed contains no language regarding mowing in the right of way. Within a matter of days after the execution of the settlement agreement, the attorneys for the parties signed and filed with the court a stipulation "to the dismissal of all claims and counterclaims in the above captioned case [Docket No. CV-15-108] with prejudice." *Defs. Exhibit 6*. The stipulation of dismissal was approved by the court on August 19, 2015. *Id.*

---

[3] Ms. Cote testified at trial that prior drafts of the settlement agreement addressed the issue of mowing in the right of way by the Mivilles, but her position was: "Absolutely not."

6

Following the execution of the settlement agreement and the filing of the stipulation of dismissal in August 2015, the erosion control plan was implemented and each party paid their respective share of the cost thereof. Also subsequent to the execution of the settlement agreement in August 2015, Mr. Miville continued to mow the grass in the right of way to a height of approximately 3-4 inches. The Mivilles testified that they believed, based upon information and advice provided to them by their former counsel, that they were allowed to maintain the right of way, including mowing the grass and that, while the settlement agreement did not expressly permit them to do so, neither did it prohibit them from doing so.

Ms. Cote testified that she has never consented to the Mivilles mowing the grass or otherwise maintaining the right of way on her property, and she believes that their actions since August 2015 constitute a breach of the settlement agreement. She further testified that "erosion issues" were at the heart of her objection to the grass mowing, in addition to her position that she, as the owner of the property, has the exclusive right to maintain the right of way, and she does not want anyone "helping me do that."

In September 2016, Ms. Cote (the Plaintiff in this second lawsuit) filed a complaint against the Mivilles asserting that they had breached the terms of the settlement agreement "by repeatedly

7

entering onto the right of way and removing vegetation naturally growing, and necessary to erosion control of the area," thereby "interfering with the property rights of the plaintiff and attempting to expand their property rights to the right of way . . . ." *Defs. Exhibit 7*. The Plaintiff's complaint sought damages, injunctive relief and reformation of the Defendants' deed.[4] The Defendants filed a timely answer on September 14, 2016 denying that they had breached the settlement agreement and raising a number of affirmative defenses, including estoppel, waiver and res judicata. The Mivilles have not asserted any counterclaims.

While this lawsuit was pending, the Plaintiff has changed her residence to Whitefield, although she still owns the property at 23 Little Cobbossee Avenue in Winthrop. She testified that she intends to maintain the right of way. This issue became a point of contention at the trial because the Defendants offered into evidence photographs showing tree limbs and branches overhanging and crossing the right of way and, essentially, narrowing the right of way and impeding the ability to use it. The Defendants' point was that the Plaintiff had not and was not maintaining the right of way in such a manner as to not interfere with their reasonable use of it. The photographs in question are marked defendants' Exhibits 17-21.

---

[4] At trial, no evidence was presented by the Plaintiff as to any actual damages, nor was any evidence presented on the request to reform the Defendants' deed to eliminate their access to and use of the right of way.

8

The court finds these photographs helpful for at least a couple of reasons. First, Defendants' Exhibits 17, 18 and 19 appear to have been taken in the summer of 2017 and show a relatively large tree branch extending across the right of way. Defendants' Exhibits 20 and 21 were apparently taken sometime after the wind storm of late October 2017 and show more significant tree limbs and branches overhanging the right of way and blocking it. Thus, notwithstanding the Plaintiff's assurance that she intends to maintain the right of way, she has generally failed to do so at least in that portion of the right of way that passes along a row of trees on each side before it becomes lawn as it reaches the shoreline. Indeed, prior to the commencement of the first lawsuit by the Mivilles, Ms. Cote took affirmative steps to interfere with the Mivilles' use of the right of way. Those actions, of course, were the subject of the first lawsuit instituted by the Mivilles and have been resolved through the settlement agreement and the stipulation of dismissal. Mr. Miville testified that he has not cut down or removed the overhanging limbs and branches because he wanted to wait until it is clear that he may legally do so.

Defendants' Exhibits 12, 13 and 19 are instructive to the court for another reason. These photographs show an area of lawn after the row of trees. It is the court's understanding that it is this area of grassy lawn that is the focus of the dispute between the parties on

9

the issue of mowing. From the photographs, it appears that the grass has been cut to a height of approximately 2-3 inches, but it is difficult to say for certain. The Mivilles' primary argument as to why they should be allowed to keep the grass mowed is their fear of ticks and snakes, although no evidence was presented to the court that the use of the right of way was actually interfered with by these perceived problems.

## DISCUSSION

The Plaintiff's claim in this action is for breach of contract, namely, the settlement agreement. Specifically, the Plaintiff contends that by mowing the grass in the right of way on her property subsequent to the execution of the settlement agreement in August 2015, the Mivilles violated paragraph 2 of the agreement, which states: "Neither party will impede, restrict or otherwise interfere with the property rights of the other as set forth in their respective deeds not [sic] attempt to expand or constrict those property interests." Stated simply, the Plaintiff maintains that by mowing the grass on her property, the Defendants interfered with her rights as the property owner (as it is her right to decide whether to mow the grass), and that they attempted to expand their own rights beyond what their deeded right of way gave them.

The Defendants argue that the Plaintiff's breach of contract claim is barred by principles of res judicata in that the settlement

10

agreement and the stipulation of dismissal with prejudice resolved the issue of mowing the grass. Moreover, the Defendants contend that they are legally entitled to mow the grass on the right of way because it is reasonable to do so in order to allow them to enjoy the use of the right of way "for all ordinary purposes of travel."

## A. Res Judicata and Equitable Estoppel

The Law Court has described the doctrine of res judicata as "a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *Machias Savings Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595, 599. There are two "branches of res judicata" - issue preclusion and claim preclusion. *In re Kaleb D.*, 2001 ME 55, ¶ 7, 769 A.2d 179. Claim preclusion, also referred to as collateral estoppel, "merely prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case." *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me. 1982). Claim preclusion, on the other hand, prohibits the relitigation of an entire cause of action "if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Machias Savings Bank*, 1997 ME 20, ¶ 11. *See also Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 6, 704 A.2d 866.

11

Whether a matter in the pending action might have been litigated in the earlier action is determined by looking at whether the same "cause of action was before the court in the prior case." *Connecticut Nat'l Bank v. Kendall*, 617 A.2d 544, 547 (Me. 1992). In defining a cause of action, the Law Court has held that a "transactional test" must be applied as follows:

> the measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial. A prior judgment bars a later suit arising out [of] the same aggregate of operative facts even though the second suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, and involves evidence different from the evidence relevant to the first case.

*Id.*

One of the principal goals of the doctrine of res judicata is to prevent a plaintiff from splitting a cause of action and prosecuting "each of its parts in separate lawsuits." *Kradosa v. Kipp*, 397 A.2d 562, 567 (Me. 1979). In other words, "[r]es judicata prevents a litigant from splintering his or her claim and pursuing it 'in piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim' that the litigant had a reasonable opportunity to argue in the prior action." *Johnson*, 1997 ME 220, ¶ 7 *quoting Kradosa*, 397 A.2d at 569.

There are aspects of this case that arguably call for the application of res judicata. For example, count 1 of the Plaintiff's

12

counterclaim in the prior action alleged trespass by the Mivilles that "caused damage to the property by removing erosion control materials . . . ." *(Defs' Exhibit 4)*. In both her testimony at trial and during her deposition of October 12, 2016, the Plaintiff acknowledged that the conduct of the Mivilles that caused that damage involved mowing on her property. *See Deposition at 32.* One could argue, as the Mivilles do, that because the counterclaim involved mowing on the Plaintiff's property, the prior action shared the same aggregate of operative facts and the right of the Mivilles to mow in the right of way could have been litigated in the prior action.

On the other hand, the issue in the prior action – as generated by the Plaintiff's counterclaim – was not necessarily whether the Mivilles had the right to maintain the right of way, including mowing the grass, but whether their actions, regardless of any right to mow the property, caused damage to the Plaintiff's property.[5] In other words, whatever right the Mivilles had or have to mow the grass in the right of way, they did not have the right to intentionally cause damage to the Plaintiff's property. *Cf. Littlefield v. Hubbard*, 113 A. 304, 306 (1921) ("Whatever the defendant's right of passage over the way, if any, she had no right to build a concrete walk or otherwise disturb the soil upon the fee of the plaintiff"). Thus, it can

---

[5] This is also what the Plaintiff testified to in her deposition. *See Deposition at 20, l. 16; 22, l. 17 & 19.*

be argued, and the Plaintiff does, that her breach of contract claim under the settlement agreement is not the same cause of action as her counterclaim in the earlier lawsuit.

The court has given serious consideration to this issue and concludes that, on balance, res judicata should not be applied in this case.

The court has also considered whether principles of equitable estoppel are applicable here. The court concludes that the Defendants have failed to establish that they justifiably relied upon anything the Plaintiff did or said to their detriment. Indeed, the Plaintiff, through counsel, made it clear that she was not consenting to any mowing and was not willing to include any language about mowing in the settlement agreement.[6]

## B. The Use of the Right of Way

In *Beckwith v. Rossi*, 175 A.2d 732, 735 (Me. 1961), the Law Court stated that "[o]ne having an easement in another's land must exercise his right in a *reasonable* manner," and that "'[t]he owner of the easement has all the rights incident or necessary to its proper enjoyment but nothing more.'" *Citing Kaler v. Beaman*, 49 Me. 207, 208 (1860) and *quoting Great Hill Lake v. Caswell*, 126 Conn. 364,

---

[6] The court also rejects the Defendants' argument that the settlement agreement itself resolved the question of mowing the grass. The settlement agreement says nothing at all about mowing the grass.

14

11 A.2d 396, 397 (1940) (emphasis in original).[7] These general principles of law apply to rights of way, since a right of way is an easement. *Hill v. Lord*, 48 Me. 83, 99 (1861). What activities are incidental or necessary for the purpose of enjoyment of an easement is a question of fact. *N. Sebago Shores, LLC v. Mazzaglia*, 2007 ME 81, ¶ 17, 926 A.2d 728; *Poire v. Manchester*, 506 A.2d 1160, 1163 (Me. 1986).

With respect to the right to perform maintenance on a right of way, the parties appear to agree with the proposition that "a person holding a right-of-way is entitled to maintain that right-of-way to the degree required for its granted uses." *Kennebec Water Dist. v. Hamilton*, 1991 Me. Super. LEXIS 192, *4 (9/10/1991) (Chandler, J.). *See also Anchors v. Manter*, 1997 Me. Super. LEXIS 55, *18 (2/19/1997) (Atwood, J.) (holders of right of way could use "reasonable efforts to maintain and repair the right-of-way to keep it passable by foot or vehicle, including, if reasonably necessary, the cutting of natural growth such as saplings and brush on the right-of-way") *aff'd,* 1998 ME 152, 714 A.2d 134.[8] The disagreement

---

[7] This appears to be consistent with the law as expressed in **Restatement (3d) of Property – Servitudes §4.10**.

[8] The Law Court's affirmance in *Anchors v. Manter*, 1998 ME 152 did not expressly discuss the question of the maintenance by the holders of the right of way on another's property. Moreover, the Defendants have cited the case of *Hultzen v. Witham*, 78 A.2d 342 (Me. 1951). That case, however, is not squarely on point because it did not involve the right of an owner of an easement to make repairs "as against the owner of the fee over which the easement passes . . . ." 78 A. 2d at 345.

15

between the parties in this case relates to the type of maintenance the Mivilles may perform in the right of way that is reasonably necessary and required for its granted purposes.

The granted purpose of the right of way is "for all ordinary purposes of travel," and it extends "to Little Cobbossee Lake." It would seem obvious that the Mivilles have the right to travel on the right of way, at the very least on foot (and perhaps by vehicle as well) in order to get to the lake shore. Indeed, it is most probable that the underlying purpose of the right of way was to allow access to the waterfront.

The court starts with the recognition that the Mivilles have the right to use the entire 30 foot right of way. Accordingly, they have the right to remove any obstacles or obstructions in the right of way that interfere with their ability to travel on it. Thus, they had the right to cut and remove the overhanging tree limbs and branches that were in the right of way and that impeded their travel on and use of it. They did not need to wait for Ms. Cote to remove those obstructions, or any other obstructions, such as brush and debris, in the right of way.

The issue that is not as clear, however, is the mowing of the grass in the right of way. As noted earlier, the portion of the right of way where mowing seems to be the major point of contention between the parties, is that area beyond the canopy of trees that appears as

16

lawn as it approaches the water's edge. This area is best depicted in Defendants' Exhibits 12, 13 and 19. Ms. Cote testified that she did mow the grass to a height of about 4 inches but stopped when Mr. Miville started doing it on a regular basis.

The court has struggled on the question of whether the Mivilles are permitted to mow the lawn on Ms. Cote's property that is within the right of way. Specifically, the Mivilles want to mow the lawn to a height of approximately 3-4 inches. There has been no showing by the Mivilles that Ms. Cote has ever allowed the grass in that area of the right of way to become overgrown or excessively tall. In researching this issue, the court has uncovered two trial court cases from other jurisdictions within New England that have provided some guidance.

In *Sgrignari v. Vallone*, 1999 Conn. Super. LEXIS 1389 (May 24, 1999), the right of way was "for general road and utility purposes and for purposes of vehicular and pedestrian ingress to and from Lots Nos. 2 and 3." The holder of the right of way began mowing the grass in the right of way, initially with the landowner's consent and then later after they had a falling out. The trial court held that the right of way was limited to ingress and egress by vehicle and by foot and for utility purposes.

In the context of the purposes of the easement, the court held that the holder of the right of way had no right "to mow the grass or

17

engage in landscaping . . . within . . . the bounds of the right of way." *Id.* at *12-13. "'Maintenance' in the context of this easement has no aesthetic component; it does not refer to maintaining the right of way by mowing or landscaping." *Id.* at *13. The court further stated that the owners of the land

> are entitled to do with it as they wish, within the law, so long as they do not interfere with the Vallones' vehicular and pedestrian ingress and egress, and the maintenance of utility service to the Vallones. Thus, the Sgrignaris are free to cut the grass on their land, low or high, or let it revert to a wild state, to cut, or 'scald', the grass down to the dirt, to allow weeds and grass to grow several inches high, to place grass clippings and mulch in the unpaved areas of the right of way, and to spray weed killer on the unpaved portions of the right of way.

*Id.* at *14.

In *Gentile v. Mahoney*, 1995 Mass. Super. LEXIS 548 (May 26, 1995), the right of way extended to the shoreline of Lake Whittemore in Spencer, Massachusetts and was "for bathing purposes."[9] The trial court found that the landowners "do not mow or keep clear the right-of-way, which becomes overgrown with tall grass and brush during the spring and summer months. Nevertheless, it remains passable." *Id.* at *7.

---

[9] At one point, the right of way was within 3 feet of the front door of the landowners' cabin. *Id.* at *4.

The court held that the right of way for "bathing purposes" did not include its use for canoeing or boating. *Id*. at *8. Applying the principle of law that an easement "includes by implication every right necessary for its enjoyment," the trial court concluded:

> The holder of an easement normally has a duty to maintain the easement in a condition as may be necessary to its use. The defendant [the holder of the right of way] acted reasonably in clearing brush and mowing tall grass when necessary to his use and enjoyment of the right-of-way.

*Id*.

In this court's view, neither the *Sgrignari* nor the *Gentile* rulings are precisely on point with this case. Unlike *Sgrignari*, this case does not involve merely a right of ingress and egress to get to another property lot or for utility services. Rather, it involves a right to travel the right of way to gain access to the lake shore. Unlike *Gentile,* there has been no showing that Ms. Cote has neglected that portion of her lawn that falls within the right of way such that she has allowed it to become overgrown with brush or tall grass.

It is the Plaintiff's position that the Defendants have no "right to mow the land, disturb the soil or otherwise do anything other than travel across Cote's property for the purpose of reaching the lake. They can do so whether the grass is non-existent or several feet high. The appearance of Cote's property and whether to mow the grass for aesthetic reasons, or to inhibit ticks and snakes inhabiting the

19

same, is purely a property right within the exclusive discretion of the landowner." *Plaintiff's Memorandum of Law* at 8. The Defendants maintain that they have a legal right to "mow their right of way to ensure that it is passable and to minimize ticks, animals and snakes from under their feet." *Defendants' Motion for Summary Judgment* at 8.

The court agrees that as the owner of the property Ms. Cote has the right, in the first instance, to mow her lawn in the manner and to the height of her preference, provided she does not interfere with the reasonable use and enjoyment of the right of way by the Mivilles. By the same token, the Mivilles' right of way "for all ordinary purposes of travel" is not, in the court's view, strictly limited to ingress and egress. Rather, implicit in the right of way is the right to enjoy access to the waterfront. Moreover, the court believes that the Mivilles' concern with the presence of ticks in tall grass cannot be so lightly dismissed. At some point, the grass in the right of way could get so high that it would unreasonably interfere with the Mivilles' enjoyment of it (even though it would not become impassable), and at that point the Mivilles would be entitled to mow such tall grass.

But there is no evidence of this happening in this case yet. The Mivilles are not entitled to mow the grass on Ms. Cote's property to a height of 3-4 inches simply because that is their personal

preference for how high grass should be cut. Ms. Cote is entitled to mow the grass on her property according to her own personal preferences unless the grass becomes so high that it constitutes an interference with the Mivilles' reasonable enjoyment of the right of way to the waterfront. Where that point is, is difficult to say. Nevertheless, in the interest of providing clarity to the parties so that future conflict and litigation can be avoided, the court holds that if the grass in the right of way becomes excessively tall, which the court determines to be 24 inches or more, the Mivilles would be entitled to cut it.

The Plaintiff's Complaint asserts a breach of the settlement agreement. The Plaintiff has the burden of proving such a breach. The court finds that the Plaintiff has established a violation of paragraph 2 of the settlement agreement as to the mowing of the grass in the right of way on her property. Nevertheless, the court finds on the facts of this case that neither party is a "substantially prevailing party," within the meaning of paragraph 4 of the settlement agreement. Accordingly, neither side is entitled to recover its attorney fees and cost from the other.

## CONCLUSION

The entry is:

Judgment for the Plaintiff against the Defendants on the Complaint. Each side shall bear its own attorney fees and costs.

21

The Clerk is directed to incorporate this judgment into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: February 28, 2018.

William R. Stokes
Justice, Superior Court