2001 ME 55

**In re KALEB D. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 28, 2001.
Decided: April 5, 2001.

James M. Dunleavey, Esq., Dunleavey Law Offices, P.A., Presque Isle, for appellant.

G. Steven Rowe, Attorney General, Christopher C. Leighton, Asst. Attorney General, Heidi Silver, Asst. Attorney General, Augusta, for appellee.

Margaret T. Johnson, Esq., Presque Isle, Guardian ad Litem.

Jefferson T. Ashby, Esq., Hardings Law Offices, Presque Isle, for father.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] The mother appeals from the judgment entered in the District Court (Presque Isle, *Griffiths, J.*) finding that Kaleb and Jared D. were in circumstances of jeopardy to their health and welfare. She contends, *inter alia*, that the court erred by: (1) not granting her motion for a summary judgment because the petition was barred under the *res judicata* doctrine and (2) finding that jeopardy existed as to Kaleb and Jared because there was insufficient record evidence to substantiate the court's determination. We disagree and affirm.

## I. FACTS AND PROCEDURE

[¶ 2] The Department of Human Services first became involved with the mother in 1998, when it filed the first petition for a child protection order against the mother, alleging that Kaleb and Jared were in immediate risk of serious harm to their health and welfare. In its preliminary protection order, the District Court (Caribou, *Daigle,* J.) agreed, concluding, *inter alia*, that:

1. An order for protection was issued against him on April 15, 1999, and is effective until

1. By a preponderance of the evidence, the Court finds that ... the former live-in-boyfriend of [the mother] physically abused Kaleb D[.], one of [the mother]'s minor children.

D.H.S. was warranted in requiring that [the mother] allow no further contact between either of her children and [the boyfriend].

There is evidence that would permit an inference that [the mother] has allowed such contact, since D.H.S. advised her of that requirement.

[The mother] has assured this Court that she shall allow no further contact.

If [the mother] evidences her resolve to do so by filing in this Court a Complaint for Protection From Abuse and this Court issues a Temporary Order for Protection from Abuse prohibiting contact of any kind, between [the boyfriend] and [the mother] and the two minor children, this amended Preliminary Protection Order will then provide that custody of the two children be returned to her, and that [the mother] will be prohibited from having contact of any kind with [the boyfriend], and/or allowing contact of any kind by him with either of the children.

[The mother] shall consent to [the] search of her premises at any time by any D.H.S. agent or law enforcement agent at the request of D.H.S. to assure her compliance with this Order.

The custody of the children was returned to the mother on September 8, 1998, on the condition that she file a Complaint for Protection from Abuse against her boyfriend, who fathered her youngest child, Kathleen D.[1] Kathleen was born on March 27, 1999.

April 15, 2001.

[¶ 3] On September 21, 1998, DHS filed another request for a preliminary child protection order, asking the court to again grant custody of the children to DHS because the mother admitted to a DHS worker that she had had contact with Kathleen's father. The court concluded, however, that the evidence DHS presented this time was not sufficient to show that the children were in immediate risk of serious harm while in the custody of their mother.[2] The court further ruled that the preliminary order issued on September 10, 1998 "continues in full force and effect, and ... the amended order for protection [from abuse] remains in full force and effect." Upon obtaining the mother's consent to the terms of the service agreement,[3] DHS filed a motion to withdraw its petition for a child protection order, and the court dismissed the petition on February 9, 1999, without prejudice.[4] A final protection order was never issued. See 22 M.R.S.A. § 4035 (1992 & Supp.2000) (stating that a final protection order may be issued if the District Court finds that the children are in circumstances of jeopardy to their health or welfare).

[¶ 4] On May 4, 2000, DHS filed the petition for child protection order for Kaleb and Jared that is at issue in this proceeding, alleging that both boys were again in circumstances of jeopardy to their health or welfare and needed protection. DHS further alleged the following:

> [The mother] has been before the court for failure to provide adequate supervision and care for the children, and allowing unsafe adults around her children. The children's physical living conditions

2. The court declined to continue the removal of the children pursuant to the September 21, 1998, petition because the mother convinced it that she misunderstood the protection order. The mother told the court she believed that only the children were prohibited from having contact with Kathleen's father and that the order did not pertain to her.

3. According to the service agreement, the mother agreed to:

> 1. Participate in a mental health assessment and follow through with the recommendations. The assessment will be done by a professional deemed appropriate by the Department of Human Services;
> 2. Follow through with services for Kaleb and Jared D[.] This includes speech therapy, occupational therapy, medical appointments, evaluations, and any other services deemed appropriate by service providers. Will follow through with recommendations made by the Aroostook Mental Health Center, Child Development Services, and Department of Human Services;
> 3. Will not allow unsafe individuals around the children or on my premises. This includes any person deemed inappropriate by the Department of Human Services. Will not allow [Kathleen's father] and/or [the mother's brother-in-law] around

> my children or on my premises under any circumstances;
> 4. Will cooperate fully with the agencies providing services and provide truthful information regarding my children. These agencies include, but are not limited to, the Department of Human Services, Child Development Services, Pines Health Services, Aroostook Mental Health Center, Cary Medical Center, etc;
> 5. Will refrain from using any physical punishment on either Kaleb or Jared D[.];
> 6. Will refrain from leaving the children unattended for any period of time; and
> 7. Will provide a safe, stable, nurturing environment for the children. This includes regular, healthy meals, a predictable schedule, and a clean, childproof home.
> In return, DHS agreed to provide referrals for services, case coordination and monitoring, and assistance, if needed, with transportation to and from services.

4. M.R. Civ. P. 41(a)(1) provides, in relevant part, that, "[u]nless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice." Because there was no stipulation among the parties indicating otherwise and because the dismissal was silent as to whether it was with or without prejudice, the dismissal in this case did not operate as an adjudication on the merits.

are unsafe because of the filth and garbage that clutter the house, where children have access to. In efforts to provide services to the children[,] service provide[r]s are unwilling and unable to provide those services in the home because of the condition of the home and [the mother's] inability to control her children.

The Department of Human Services believes that the children are in je[o]pardy because of [the mother]'s neglect of her children.

Although a separate petition was filed for Kathleen D., the children's petitions were consolidated for the final jeopardy hearing. Kathleen's father consented to the preliminary protection order, waiving his right to a hearing on the matter. As for the boys' father, the petition did not affect his rights; he is not a party to the present action.

[¶5] After the two-day jeopardy hearing, the court concluded, in relevant part:

1. The Court finds by a preponderance of the evidence that Kathleen D[.], Kaleb D[.] and Jared D[.] are in circumstances of jeopardy from the threat of physical abuse and the failure to protect by their mother ... and because of her inability to provide them with a safe household resulting in ... the threat of serious harm to Kaleb D[.] and Jared D[.]

The court further ordered that DHS conduct a homestudy at the home of the boys' father to determine his suitability as a placement for Kaleb and Jared. The mother did not appeal the court's jeopardy determination as it relates to Kathleen. She appeals, however, from the District Court's judgment to the extent it pertains to Kaleb and Jared.

## DISCUSSION

[¶6] The mother argues that, because the first petition for child protection order was dismissed, the present child protection proceeding—which presents similar issues—is barred under the *res judicata* doctrine. Her claims are unpersuasive.

[¶7] The doctrine of *res judicata* is inapplicable to the facts of this case. The doctrine "is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *Camps Newfound/Owatonna v. Harrison,* 1998 ME 20, ¶11, 705 A.2d 1109, 1113 (quotation omitted). There are two branches of *res judicata,* including issue preclusion and claim preclusion. Issue preclusion, also known as collateral estoppel, prevents the relitigation, in a second action, of an issue of fact actually litigated and decided in an earlier case.[5] *Id.*

[¶8] On the other hand, "the doctrine of bar, or 'claim preclusion,' prohibits relitigation of an entire 'cause of action.' " *Id.* (quoting *Beegan v. Schmidt,* 451 A.2d 642, 644 (Me.1982)). Claim preclusion bars the relitigation of a claim "if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been[,] litigated in the first action." *Id.*

---

5. Issue preclusion is the branch of *res judicata* that "prevents the relitigation of factual issues already decided if 'the identical issue was determined by a prior final judgment, and ... the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.' " *Cline v. Maine Coast* *Nordic,* 1999 ME 72, ¶9, 728 A.2d 686, 688 (quoting *Perry v. H.O. Perry & Son Co.,* 1998 ME 131, ¶6, 711 A.2d 1303, 1305). The mother does not assert that this branch of the *res judicata* doctrine applies. We, accordingly, will not consider its operation, if any, in this case.

To determine whether the matter presented for decision in the instant action were or might have been litigated in the prior action, we examine " 'whether the same "cause of action" was before the court in the prior case.' " *Id.* (quoting *Connecticut Nat'l Bank v. Kendall,* 617 A.2d 544, 547 (Me.1992)). We apply the transactional test to define a cause of action, pursuant to which:

> the measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for the purposes of trial. A prior judgment bars a later suit arising out [of] the same aggregate of operative facts even though the second suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, and involves evidence different from the evidence relevant to the first case.

*Id.* (quotations and citations omitted). A plaintiff may not split a cause of action and prosecute each of its parts in separate lawsuits. *Id.* ¶ 12. "Judicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings demand that a plaintiff present all relevant aspects of his cause of action in a single lawsuit." *Id.,* 705 A.2d at 1113–14 (quotation omitted). *Res judicata* prevents a litigant from splitting the litigant's claim and pursuing it "in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim" that the litigant had a reasonable opportunity to argue in the prior action. *Id.,* 705 A.2d at 1114 (quotation omitted).

[¶ 9] Applying the law to the facts of this case, the doctrine of claim preclusion is inapplicable here because (1) the "final judgment" prong of the claim-preclusion test is not met and (2) the events upon which the jeopardy proceeding is based are largely post-dismissal events. With respect to the "final judgment" requirement, we have held that "[t]he preliminary protection order is intended to act as a short-term vehicle for providing safety to children in immediate risk of serious harm, not to establish the longer term goals." *In· re Heather C.,* 2000 ME 99, ¶ 5, 751 A.2d 448, 451. Indeed, any determination of the court in the preliminary order is subject to change as a result of the jeopardy hearing. *Id.* (citing 22 M.R.S.A. §˙4035). The facts found by the court at the summary hearing, therefore, are not final for purposes of *res judicata. Id.; see also In re Isaiah B.,* 1999 ME 174, ¶ 8, 740 A.2d 988, 991 (finding, "[i]nterlocutory orders are not final judgments for the purpose of *res judicata* ").

[¶ 10] *Res judicata* is also inapplicable in this case because the preliminary order is interlocutory in nature and, as such, is not appealable. *In re Heather C.,* 2000 ME 99, ¶ 5, 751 A.2d at 451 (citing 22 M.R.S.A. § 4006). This is so because a preliminary order automatically expires upon the issuance of a final protection order pursuant to 22 M.R.S.A. § 4035, which was never issued in the prior proceeding.

[¶ 11] Further, the *res judicata* doctrine is inapplicable in this case because the present action is based largely on actions of the mother that occurred after the dismissal of DHS's prior petition for a child protection order. The mother's post-dismissal actions are not immune from subsequent DHS proceedings merely because they are similar in nature to the allegations DHS made against the mother in the prior dismissed petition. Rather, the fact that the allegations are similar in nature indicates that the mother has made little or no improvement. Contrary to the mother's contentions, therefore, her post-dismissal actions constitute new, independent events that are actionable in and of themselves and the evidence of which are

sufficient to support the court's jeopardy determination.

[¶ 12] Finally, it would be inappropriate to apply the *res judicata* doctrine to the facts of this case. The mother cannot procure the dismissal of a child protective proceeding by agreeing to adhere to the terms of a service agreement, fail to abide by that agreement, and then seek to dismiss the subsequent proceeding under the doctrine of claim preclusion. To allow such a result would defy the "child protection" purpose for which such proceedings stand. For the foregoing reasons, the prior dismissal did not operate as a bar to the present action.

[¶ 13] Contrary to the mother's assertions, moreover, there is sufficient competent evidence in the record to support the court's finding that the children are in jeopardy. *See In re Thomas B.*, 1998 ME 236, ¶ 2, 719 A.2d 529, 530 (holding, when "determining the sufficiency of the evidence presented to the District Court, 'any finding, whether express or assumed, is tested under the "clearly erroneous" standard by determining whether there is any competent evidence in the record to support it' "); *In re David G.*, 659 A.2d 859, 861 (Me.1995) (stating, "[i]f there is "rational or competent support in the record" for the trial court's findings, we must sustain them"); 22 M.R.S.A. § 4035.

[¶ 14] The remainder of the mother's assertions lack merit and warrant no further discussion.

The entry is:

Judgment affirmed.