MAINE SUPREME JUDICIAL COURT                                   Reporter of Decisions
Decision:      2021 ME 33
Docket:        Cum-20-184
Argued:        February 10, 2021
Decided:       June 24, 2021

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ.
Majority:      MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ.
Concurrence: CONNORS, J.

## 20 THAMES STREET LLC et al.

v.

## OCEAN STATE JOB LOT OF MAINE 2017 LLC

MEAD, J.

[¶1]  20 Thames Street LLC and 122 PTIP LLC (collectively, 20 Thames) appeal from a decision of the Superior Court (Cumberland County, *Stewart, J.*) affirming the judgment of the District Court entered in the Business and Consumer Docket (Portland, *Duddy, J.*) in favor of Ocean State Job Lot of Maine 2017 LLC.  20 Thames asserts that the District Court erred when it granted Ocean State's motion to dismiss and determined that 20 Thames's complaint for forcible entry and detainer (FED) was barred by the claim preclusion branch of res judicata.  We agree and vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶2]  The following substantive facts are taken from the allegations in the complaint and are viewed as if they were admitted, *see Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 2, 54 A.3d 710, and the procedural facts are drawn from the record.

[¶3]  20 Thames is the landlord and Ocean State is the tenant pursuant to a commercial lease for property in Falmouth.  On April 25, 2018, 20 Thames provided a "Notice of Default and Termination" to Ocean State enumerating four events of default:

1.  Failure to sign and return the Subordination Non Disturbance Agreement as required by Section 27 of the Lease;
2.  Failure to sign and return the Estoppel Certificate within 10  days after request as required by Section 29 of the Lease;
3.  Failure to provide evidence of insurance naming the Landlord as an additional insured as required by Section 9 of the Lease; and
4.  Failure to comply with Section 3 of the Lease by allowing a trailer to remain at the loading dock for a period of time in excess of overnight or as otherwise may be permitted by the Lease.

The notice further provided: "There is no way to cure the default enumerated in item 2 above and Section 29 provides that the Lease may be terminated immediately.  The additional defaults are not in waiver of the Landlord's right to immediately terminate the Lease for failure to provide the Estoppel

Agreement." It directed Ocean State to surrender the premises. Ocean State responded by letter dated May 3, 2018, in which it asserted, among other things, that its trailer-parking practices did not violate the lease.

[¶4] After Ocean State refused to vacate, 20 Thames filed an FED complaint on May 7, 2018, in the District Court. The complaint asserted one count for possession of the property, and paragraph twenty-one specifically provided:

> By reason of a Notice of Termination of Lease for failure to:
> a. sign and return the SNDA and sign and return the Estoppel as required by the Lease;
> b. provide evidence of insurance naming the Plaintiff as an additional insured as required by the Lease; and
> c. comply with Section 3 of the Lease by allowing a trailer to remain at the loading dock for a period of time in excess of overnight or as otherwise may be permitted by the Lease,
>
> Defendant's tenancy has been terminated. See [the 2018 termination notice], Defendant's refusal to execute the estoppel.

The matter was transferred to the Business and Consumer Docket, and after a three-day trial, the court (*Mulhern, J.*) entered judgment in favor of Ocean State. The judgment addressed only 20 Thames's assertion of default and termination based on Section 29 of the lease. 20 Thames appealed, and the Superior Court (*Warren, J.*) affirmed the judgment on the merits but vacated an award of attorney fees. Ocean State appealed the attorney fees decision, and we affirmed

the Superior Court's decision. *See 20 Thames St. LLC v. Ocean State Job Lot of Me. 2017, LLC*, 2020 ME 55, ¶ 1, 231 A.3d 426.

[¶5]  Meanwhile, on September 25, 2019, 20 Thames sent another "Notice of Termination" to Ocean State.  It stated:

> The purpose of this letter is to provide Tenant with notice of the immediate termination of the Lease due to Tenant's ongoing and continuous violation, since April 2018, of Section 3 of the Lease pursuant to which Tenant is prohibited from storing trailers on the Premises other than during times when those trailers are being unloaded and, in any event, no longer than overnight.  Tenant has regularly stored trailers on the Premises for between 2 and 5 days at a time.
>
> Tenant received a Notice of Default regarding this Lease violation dated April 25, 2018.  By letter dated November 19, 2018 Tenant's legal counsel argued that Tenant's trailer parking practices were "consistent with Section 3 of the Lease."  By letter dated December 10, 2018, Landlord's legal counsel explained why that statement is incorrect, and warned Tenant that its "current practice of storing trailers [on the Premises] for days at a time is an ongoing default and must stop immediately."
>
> Despite the Notice of Default and the subsequent warning, Tenant continues to park trailers on the Premises for multiple days at a time and has stated in an email . . . dated June 26, 2019 that it does not intend to change that practice.  Accordingly, Landlord hereby exercises its right under the Lease to terminate the Lease effective immediately.

The letter directed Ocean State to surrender the premises.  After Ocean State again refused to surrender possession, 20 Thames filed a new FED complaint in the District Court on October 21, 2019.

[¶6]  The complaint alleged that 20 Thames had provided Ocean State with a notice of default in April 2018 based on its trailer-parking practices and that Ocean State had thereafter "admitted in an email . . . that '[a] trailer is currently delivered 3 times a week, is unloaded and remains until the next truck delivery, at which time the trailer is removed and a new full one replaced and subsequently unloaded.'"  The complaint further asserted that Ocean State "always ha[d] at least one trailer parked on the Premises," had denied that its conduct violated the lease, and had failed to modify its conduct.  Finally, the complaint asserted that, because Ocean State failed and refused to cure the default, the lease was terminated.  20 Thames attached to the complaint a copy of (1) the lease, (2) the 2018 termination notice, and (3) the 2019 termination notice.  The case was transferred to the Business and Consumer Docket.

[¶7]  Ocean State moved to dismiss the 2019 action on res judicata grounds, arguing that both claim and issue preclusion barred the action.  On December 20, 2019, after oral arguments from both parties, the District Court (*Duddy, J.*) granted Ocean State's motion to dismiss and entered judgment in favor of Ocean State.[1]

---

[1]  The District Court took judicial notice of the pleadings and other filings in the 2018 action. Although the court considered "materials outside the [2019] pleadings, the proceeding was not transformed into a summary judgment proceeding because [the 2018] materials were public records

[¶8] The court determined that issue preclusion did not apply but that 20 Thames's action was barred by claim preclusion. It found that the same parties were involved in both actions and there was a valid, final judgment in the prior action. The court then determined that the claim in the 2019 action based on Section 3 of the lease arose out of the same nucleus of operative facts as the defaults raised in the 2018 action. Next, the court examined whether it *should* apply claim preclusion to bar 20 Thames's 2019 action and noted that a subsequent FED action by a landlord should not be precluded where "new and different conduct occurs." However, it determined that new and different conduct had not occurred because 20 Thames's allegations referred to Ocean State's conduct as ongoing and continuous and that conduct predated the 2018 complaint.

[¶9] 20 Thames appealed, and on June 15, 2020, the Superior Court (*Stewart, J.*) affirmed the District Court's judgment. *See* 14 M.R.S. §§ 6008(1), 6017(2) (2021). It concluded that 20 Thames's Section 3 claim in the 2019 action was raised in the 2018 action and might have been litigated at that time. 20 Thames timely appealed from that decision. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2B(c)(1); M.R. Civ. P. 80D(f)(1).

---

and their authenticity was not challenged." *Estate of Treworgy v. Comm'r, Dep't of Health and Hum. Servs.*, 2017 ME 179, ¶ 7 n.2, 169 A.3d 416.

## II. DISCUSSION

[¶10]  20 Thames argues that the trial court erred in granting Ocean State's motion to dismiss on claim preclusion grounds because the Section 3 claim was not and could not have been litigated in the 2018 action, particularly because only Section 29 was at issue in that action.  Ocean State contends that 20 Thames asserted a claim based on Section 3 in its 2018 complaint but chose to focus its case on Section 29 and, thus, the claim was or could have been litigated in the prior action.

### A.     FED Actions

[¶11]  We begin with a brief overview of the characteristics of FED cases. FED actions are unusual in that they are intended to be narrow.  *See, e.g.,* 35A Am. Jur. 2d *Forcible Entry and Detainer* § 5 (2021) ("A forcible entry and detainer action is a limited or summary proceeding, and the remedy of forced entry and unlawful detainer is summary in character." (footnotes omitted)). Such actions are limited in scope because they are "summary proceeding[s] to decide who is entitled to the immediate possession of land."  *Town of Blue Hill v. Leighton*, 2011 ME 103, ¶ 8, 30 A.3d 848 (quotation marks omitted). Consequently, the application of claim preclusion to bar subsequent claims is necessarily narrower than in other civil actions.  *See, e.g., Bureau v. Gendron*,

8

2001 ME 157, ¶¶ 6, 8, 9, 6 n.2, 783 A.2d 643 (concluding that claims in subsequent tort and contract action were not barred because they "were not, and could not have been, adjudicated in the" FED action).

[¶12] Nevertheless, it is widely accepted that claim preclusion may apply in FED actions as a general matter. *See, e.g.,* 50 C.J.S. *Judgments* § 1162, Westlaw (database updated June 2021) ("The doctrine of claim preclusion applies to actions of forcible entry and detainer. A judgment in an action of forcible entry and detainer is conclusive and bars further litigation between the parties as to matters which could and should have been adjudicated as well as to matters put in issue and determined, and, generally such judgment may be pleaded in bar to another action of forcible entry and detainer." (footnotes omitted)). With that context in mind, we turn to the question presented in this appeal.

B.     Claim Preclusion[2]

[¶13] "When . . . the Superior Court acts as an intermediate appellate court . . . we review directly the District Court's judgment for errors of law." *Town of Blue Hill*, 2011 ME 103, ¶ 7, 30 A.3d 848 (citation omitted). "We review

---

[2] The concurrence asserts that this case should be analyzed pursuant to issue preclusion principles. Concurring Opinion ¶ 37. We disagree. The parties' arguments and the court's decision by their very terms clearly do not assert or address issue preclusion, and we decline to recharacterize their arguments. However, we agree with the concurrence's ultimate conclusion that it is impossible to discern definitively from the record before us whether the parties actually litigated or the trial court actually decided the trailer issue in the 2018 action. Concurring Opinion ¶ 44.

the court's grant of a motion to dismiss de novo for errors of law," *Lawson v. Willis*, 2019 ME 36, ¶ 7, 204 A.3d 133 (quotation marks omitted), and specifically, "[w]e review de novo a trial court's determination that claim preclusion bars a particular litigation," *Sebra v. Wentworth*, 2010 ME 21, ¶ 11, 990 A.2d 538.

[¶14]  A court deciding a motion to dismiss does not adjudicate facts but must evaluate the complaint's allegations.  *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830.  Consequently, when we review a judgment granting a motion to dismiss, "we consider the facts stated in the complaint as if they were admitted" and "examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory."  *Id.* (quotation marks omitted).  Although the general preference is for cases to be resolved on the merits, *Thomas v. Thompson*, 653 A.2d 417, 420 (Me. 1995), a motion to dismiss should be granted "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim."  *Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830 (quotation marks omitted).

[¶15]  The claim preclusion branch of res judicata prevents parties from relitigating claims "if[] (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371 (quotation marks omitted)*.*  The purposes of claim preclusion are well established:

> Claim preclusion is grounded on concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants. The doctrine promotes those goals by preventing a party from splintering his or her claim and pursuing it in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim that the litigant had a reasonable opportunity to argue in the prior action.

*Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, ¶ 19, 170 A.3d 230 (citation and quotation marks omitted).

[¶16]  The parties here do not dispute that the first two elements of claim preclusion are met; the same parties were involved in both actions, and there was a valid final judgment in the 2018 action.  *See Wilmington Tr. Co.*, 2013 ME 94, ¶ 7, 81 A.3d 371.  Accordingly, we focus our attention on the third element—whether the Section 3 claim raised in the 2019 action was or might have been litigated in the 2018 action.  *See id.*  Critically, the parties disagree as

to whether the trailer issue that is central to the Section 3 claim was, in fact, raised or presented in the 2018 action.

[¶17] When considering the third element of claim preclusion, "we examine whether the same cause of action was before the court in the prior case." *Id.* ¶ 8 (quotation marks omitted). In analyzing the cause of action, "we apply a transactional test, examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Sebra*, 2010 ME 21, ¶ 12, 990 A.2d 538 (quotation marks omitted).

[¶18] Complicating this matter is the phrasing of the pertinent documents. The 2018 termination notice enumerated four events of *default* pursuant to the lease but purported to seek *termination* on only one. The 2018 complaint listed the same four defaults—referring back to the termination notice—and asserted that, based on those four defaults, the "tenancy ha[d] been terminated."[3] Indeed, 20 Thames conceded before the District Court, in its appellant's brief, and at oral argument that the 2018

---

[3] Said differently, although the 2018 termination notice stated four grounds of default and *potential* termination of the lease, 20 Thames asserted in that 2018 notice only one reason why the lease was, in fact, terminated. To reiterate, for this reason we cannot say on this record that 20 Thames distinctly raised the trailer issue in the 2018 action.

complaint was ambiguously worded. There is a distinction between asserted defaults and bases for termination; an FED action is brought only after termination of a lease. *Cf.* 14 M.R.S. § 6017(2)(A) ("*After termination* of a commercial lease, and after a complaint for forcible entry and detainer is filed, the defendants shall . . . appear on the return day to pay the agreed-upon rent, including all arrears." (emphasis added)).

[¶19] The pivotal question in this case is whether 20 Thames terminated the lease in 2018 based upon Ocean State's trailer-parking practices. However, this is a factual issue that was never addressed by the trial court—appropriately so on a motion to dismiss where facts are not adjudicated. *See Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830. In this situation, whether or not the lease was *terminated* in 2018 based upon Ocean State's trailer-parking practices must be addressed to determine whether the claim was or could have been litigated. But because the standard on a motion to dismiss requires courts to treat the facts as admitted and view the complaint in the light most favorable to the plaintiff, *id.*, such findings were not made. Likewise, we cannot and do not make such factual findings. *Fissmer v. Smith*, 2019 ME 130, ¶ 26, 214 A.3d 1054.

[¶20]  Viewing the complaint in the light most favorable to 20 Thames, *see Saunders,* 2006 ME 94, ¶ 8, 902 A.2d 830, we conclude that the trial court erred in granting Ocean State's motion to dismiss because the factual allegations in the 2019 complaint are sufficient to support a new claim.  The facts alleged could support a new claim for a default *and termination* pursuant to Section 3 of the lease that was not or could not have been litigated in the 2018 action.  *See Wilmington Tr. Co.*, 2013 ME 94, ¶ 7, 81 A.3d 371; *Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830.

[¶21]  The District Court's analysis painted with too broad a brush in considering the similarity of the claims in the two actions when it determined that the transactional test was met because (1) both cases were commercial FED actions, (2) both involved the same property and lease, (3) both sought eviction for defaults under the lease, and (4) the Section 3 issue was "related in time, space, origin, and motivation" to the other previously alleged defaults.  Given their summary nature, *see Town of Blue Hill*, 2011 ME 103, ¶ 8, 30 A.3d 848, many FED cases would be subject to dismissal on claim preclusion grounds if we were to conclude that similarity at this level of generality was sufficient to meet the transactional test.  That is, successive FED actions will always address the same property and the same lease and seek eviction for

defaults, because that is the singular purpose of FED actions. *See id.* Without more, such similarities are not a strong enough basis to apply claim preclusion. *See Wilmington Tr. Co.*, 2013 ME 94, ¶ 7, 81 A.3d 371; *Sebra*, 2010 ME 21, ¶ 12, 990 A.2d 538.

[¶22]  Furthermore, similarity of conduct alone is insufficient to establish that a subsequent claim is the same as a prior claim for purposes of claim preclusion.  For example, in *In re Kaleb D.*, we concluded that a mother's actions after an earlier child protection proceeding was dismissed were "not immune from subsequent [Department of Human Services] proceedings merely because they [were] similar in nature to the allegations DHS made against the mother in the prior dismissed petition."  2001 ME 55, ¶ 11, 769 A.2d 179.  We explained that the mother's "post-dismissal actions constitute[d] new, independent events that [were] actionable in and of themselves."  *Id.*

[¶23]  New conduct, although similar to prior conduct, may support a new action in an appropriate case.  *See id.*  This principle is of particular consequence in FED actions where the purpose of the action and the remedies are limited.  *See Bureau*, 2001 ME 157, ¶¶ 8-9, 783 A.2d 643.  Applied to these facts, *Kaleb D.* supports the conclusion that Ocean State's trailer-parking practices as alleged in the 2019 complaint could amount to new conduct,

notwithstanding the fact that 20 Thames listed an earlier default in the 2018 action based on the same lease provision.

[¶24] Much ado is made about 20 Thames's characterization of Ocean State's conduct as ongoing and continuous. But that alone does not compel a conclusion that the conduct alleged in 2018 constituted the same basis for termination in 2019, particularly given the lingering uncertainty as to whether the lease was in fact terminated in 2018 on the basis of Section 3.[4] Plainly put, this record is not sufficiently developed. The complaint alleged ongoing and continuous conduct, but viewing the complaint in 20 Thames's favor, the allegations may still support a new claim. *See Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830; *see also Wilmington Tr. Co.*, 2013 ME 94, ¶ 12, 81 A.3d 371 (concluding that a subsequent lawsuit was not barred because, although the party in the first lawsuit alleged a breach of the same note and mortgage that was being foreclosed on in the subsequent action, the second action alleged a breach of a different mortgage term and was based on separate conduct).

[¶25] On the record before us, we cannot say that the Section 3 claim in the 2019 action satisfies the transactional test with respect to the 2018 action. *See Sebra*, 2010 ME 21, ¶ 12, 990 A.2d 538. We are not convinced that

---

[4] As noted above, if the lease had not been terminated, no action for forcible entry and detainer would be permissible. *See* 14 M.R.S. § 6017(2) (2021).

20 Thames would not be entitled to relief under any set of facts it might prove in support of its claim. *See Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830. Additionally, the goal of fairness to litigants would not be served under the circumstances by concluding that 20 Thames's Section 3 claim was or might have been litigated in the 2018 action. *See Deschaine*, 2017 ME 190, ¶ 19, 170 A.3d 230. FED cases are not entirely insulated from the application of claim preclusion, and in an appropriate case it may very well apply. *See* 50 C.J.S. *Judgments* § 1162. But on the record before us, we conclude that the District Court erred when it granted Ocean State's motion to dismiss 20 Thames's 2019 complaint on claim preclusion grounds. We cannot and do not purport to itemize the factual issues to be resolved on remand.

The entry is:

> Judgment vacated. Remanded to the Superior Court with directions to remand to the District Court for further proceedings consistent with this opinion.

_____

CONNORS, J. concurring.

[¶26] I agree that 20 Thames should not be precluded from pursuing this action, but I take a different path from the Court in arriving at this result. I conclude that claim preclusion does not apply because of the continuous nature

of the alleged section 3 trailer violation; that we must address the question of issue preclusion given the substance of the parties' arguments; and that issue preclusion does not apply because the trailer issue was not "actually litigated."

[¶27]  I arrive at this conclusion by relying on the facts reflected in the proceedings of the first FED action, which are essentially undisputed: 20 Thames raised the trailer issue in the first FED action; Ocean State apparently said something about this issue in its defense at trial; and the trial court did not expressly address the issue in its written decision entering judgment for Ocean State.

## I.  CLAIM PRECLUSION

[¶28]  Claim preclusion applies when "the matters presented for decision in the second action were, or might have been, litigated in the first action." *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, ¶ 15, 170 A.3d 230 (quotation marks omitted).  Given that the trailer issue was at least initially raised in the first FED action, it appears indisputable that this issue "might have been" litigated in that action.  So why does claim preclusion not apply?

[¶29]  The Court properly notes that the nature of an FED action should be considered when applying preclusion principles.  Court's Opinion ¶ 11. I agree, but beyond that, our analyses diverge.  The Court remands for further

factual development to determine whether the lease was "in fact terminated" on the basis of the trailer issue, without identifying what additional facts could be relevant beyond the existing record evidence from the first FED action. Court's Opinion ¶ 24. The Court also at least suggests that a continuous lease violation would not ordinarily overcome a preclusion defense. *Id.* I am unclear as to what additional facts could illuminate the claim preclusion issue beyond the existing record, and I believe that the continuous nature of the alleged violation is the key to defeating Ocean State's claim preclusion defense.

[¶30]  Application of the "might have been litigated" prong of claim preclusion in an FED action poses difficulties given the summary nature of such proceedings. *See Tozier v. Tozier*, 437 A.2d 645, 649 & n.7 (Me. 1981) (describing an FED action as a "summary proceeding" that performs a "limited function"). "Preclusive doctrines promote judicial economy, but they do so by relying upon the opportunity for a full, complete and fair adjudication on the merits. Forcible entry and detainer actions, by contrast, sacrifice a full, fair proceeding in favor of a quick, but provisional, resolution between the parties." Kimberly E. O'Leary, *The Inadvisability of Applying Preclusive Doctrines to Summary Evictions*, 30 U. Tol. L. Rev. 49, 72 (1998); *see also* Rosemary Smith, *Locked Out: The Hidden Threat of Claim Preclusion for Tenants in Summary*

*Process*, 15 Suffolk J. Trial & App. Advoc. 1, 25 (2010) ("[T]he very purpose of an expedited proceeding would be undermined if lawyers felt obliged to append a multitude of related claims, lest they be barred by claim preclusion from raising them in a separate action."). It is counterproductive to require a landlord to raise every possible ground for terminating a lease in an FED action or forego the opportunity to evict on that ground later; conversely, it is inefficient to allow a landlord to proceed in a second FED action based on conduct that occurred before the first FED action.

[¶31] There is, however, a middle ground. A second FED action may go forward based on conduct violative of the lease that began prior to the first FED proceeding and sufficiently continued thereafter to independently support further action.

[¶32] "[C]ourts have long abided by the unremarkable principle that claims arising subsequent to a prior action . . . are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same course of conduct." *Darney v. Dragon Prods. Co.*, 592 F. Supp. 2d 180, 184 (D. Me. 2009) (alteration and quotation marks omitted); *see also Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*, 937 F. Supp. 2d 93, 108 (D. Me. 2013). In *Singh v. Quadri*, No. 1-17-2719, 2018 Ill. App. Unpub. LEXIS

2265 (Ill. App. Ct. Dec. 19, 2018), the court affirmed the trial court's grant of

FED relief after two unsuccessful FED proceedings, concluding that the third

proceeding was not barred by res judicata. The court's reasoning is instructive:

> [E]ven [were we] to accept the defendant's position that the plaintiff was aware that the defendant was violating his lease in 2015 and 2016 in the same manner in which he is currently violating the lease, the defendant's ongoing violations constitute separate causes of action, which are not barred by the doctrine of *res judicata*. See *Altair Corp. v. Grand Premier Trust & Investment, Inc.*, 318 Ill. App. 3d 57, 63, 742 N.E.2d 351, 252 Ill. Dec. 101 (2000) (*Res judicata* does not apply where "the wrong suffered by the plaintiff is of a recurrent or ongoing nature."); see also *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 222, 681 N.E.2d 12, 224 Ill. Dec. 30 (1997) ("[A] defendant's continuing course of conduct, even if related to conduct complained of in an earlier action, creates a separate cause of action. . . . The doctrine of *res judicata* does not bar claims for continuing conduct complained of in the [latter] lawsuit that occur after judgment has been entered in the first lawsuit. . . ."); see also *Rasmussen v. City of Lake Forest*, 848 F. Supp. 2d 864, 868 (N.D. Ill. 2012) (noting that if *res judicata* applied to bar claims occurring after judgment was entered in the previous lawsuit "defendants who repeatedly cause injury through continuing nuisances would effectively have immunity from liability for future violations if a plaintiff did not successfully obtain injunctive relief in the initial suit")[.]

*Id.* at 20-21.

[¶33] "Application of this unremarkable principle is complicated by the

at-times-difficult determination of what degree of conduct is necessary to give

rise to a new 'claim,' particularly where ongoing conduct is involved." *Storey v.*

*Cello Holdings, L.L.C.*, 347 F.3d 370, 383-84 (2d Cir. 2003). But "[w]here the

facts that have accumulated after the first action are enough on their own to sustain the second action," the second claim is not barred.  *Id.* at 384.

[¶34]   Here, the ground for termination asserted in the second FED action—the alleged section 3 trailer violation—was continuous such that, irrespective of 20 Thames's claim that Ocean State violated the same lease term in the first FED action, it can independently form the basis of a ground to terminate in the second FED action.  Hence, claim preclusion does not apply.

## II.  ISSUE PRECLUSION

[¶35]  The parties have devoted a substantial portion of their arguments, both before the Superior Court and on appeal, to debating whether the trailer issue was in fact litigated in the first FED action.  As noted, claim preclusion bars litigating a claim when "the matters presented for decision in the second action *were*, or might have been, *litigated* in the first action."  *Deschaine*, 2017 ME 190, ¶ 15, 170 A.3d 230 (emphasis added and quotation marks omitted).  Issue preclusion bars relitigation of issues that were "actually litigated" in the first action.  *State v. Moulton*, 481 A.2d 155, 161 (Me. 1984).  What is the difference between matters that "were . . . litigated" for purposes of claim preclusion and matters that were "actually litigated" for purposes of issue preclusion?

22

[¶36]  We have said that "[t]o determine whether the matters presented for decision in the instant action were or might have been litigated in the prior action, we examine whether the same cause of action was before the court in the prior case." *Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 6, 704 A.2d 866 (quotation marks omitted).  In other words, as a practical matter, there is no separate analysis in the claim preclusion context as to whether a matter was litigated versus might have been litigated.  The totality of the defense focuses on whether the second action relates to the same transaction or a different transaction than the one at issue in the first action.

[¶37]  Thus, whether a specific matter—like the alleged section 3 trailer violation—has been previously litigated raises a question of issue preclusion. The Court treats 20 Thames's appeal as not asserting issue preclusion.  Court's Opinion n.2.  But, as noted, the parties have disputed at length whether the alleged trailer issue was in fact litigated in the first FED action, not just whether the alleged violation could be viewed as part of the same transaction previously litigated.  However this argument is labeled, it is properly analyzed pursuant to issue preclusion principles.

[¶38]  Furthermore, the Superior Court appears to have assumed that issue preclusion could not apply because the trial court's written decision in the

first FED action did not expressly dispose of the trailer issue in rejecting the lease termination. But this is not necessarily the case. Issue preclusion does not *always* require an explicit ruling by the court.

[¶39] An issue was "actually litigated" when it was raised, contested by the parties, and submitted to the court for determination. *See* 18 James W. Moore et al., *Moore's Federal Practice* § 132.03 (3d ed. 2021); *see also* Restatement (Second) of Judgments § 27 cmt. d (Am. L. Inst. 1982). The mere fact that an issue was raised in a pleading does not establish that the issue was actually litigated. And if an issue is raised but abandoned before the final disposition, then issue preclusion does not apply. 18 Moore et al., *Moore's Federal Practice* § 132.03[2][e]; *see also Adolph Coors Co. v. Comm'r*, 519 F.2d 1280, 1283 (10th Cir. 1975).

[¶40] On the other hand, actual litigation does not require thorough litigation. *See Cont'l Can Co., U.S.A. v. Marshall*, 603 F.2d 590, 596 (7th Cir. 1979) (concluding that an issue "was actually litigated despite the imbalance in the quantity of evidence introduced"). Rather, there must be evidence that the parties "distinctly" presented the issue to the trial court. *Montana v. United States*, 440 U.S. 147, 153 (1979) (quotation marks omitted).

[¶41]  In addition to meeting the actual litigation requirement, an issue must have been actually decided for it to be given preclusive effect.  An explicit ruling, however, is not required.  *See Stoehr v. Mohamed*, 244 F.3d 206, 208 (1st Cir. 2001) (per curiam) ("'An issue may be "actually" decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation.'" (quoting *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30-31 (1st Cir. 1994))).  Issue preclusion arises when the identical issue was necessarily decided by the prior judgment.  *See Guardianship of Jewel M.*, 2010 ME 80, ¶ 39, 2 A.3d 301; *see also Button v. Peoples Heritage Sav. Bank*, 666 A.2d 120, 122 (Me. 1995); *Morton v. Schneider*, 612 A.2d 1285, 1286 (Me. 1992).  "If several issues are litigated in an action, and a judgment cannot properly be rendered in favor of one party unless all of the issues are decided in his favor, and judgment is given for him, the judgment is conclusive with respect to all the issues."  Restatement (Second) of Judgments § 27 cmt. g (Am. L. Inst. 1982).

[¶42]  In sum, "[t]he appropriate question, then, is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment."  Restatement (Second) of Judgments § 27 cmt. j (Am. L. Inst. 1982).

[¶43]  Applying these principles, 20 Thames distinctly raised the trailer issue in its complaint in the first FED action, and Ocean State mounted a defense, however briefly.  This suggests that the parties recognized the issue and that it was actually litigated.  On the other hand, although 20 Thames raised the trailer issue in its pleadings, it apparently offered no evidence at trial and argues on appeal, essentially, that it abandoned the issue before disposition.  Regarding whether the issue was decided in the first FED action, the trial court did not mention the trailer issue in its written decision, which could support a conclusion that the issue was abandoned and therefore the trier did not recognize the issue as necessary to its disposition.  But in the absence of an express abandonment of the issue on the record and the submission of a defense to that basis for termination, the trial court's denial of the termination could be viewed as including an implicit rejection of an issue that, while minor or cursorily treated by the parties, was necessary to dispose completely of the action.

[¶44]  On this record, it is impossible to discern definitively whether the parties actually litigated—or the trial court actually decided—the trailer issue in the first FED action.  "When a court cannot ascertain what was litigated and decided, issue preclusion cannot operate."  18 Moore et al., *Moore's Federal*

*Practice* § 132.03[2][g]; *see Hauser v. Mealey*, 263 N.W.2d 803, 808-09 (Minn. 1978) (declining to preclude the relitigation of issues previously determined when there was more than one possible basis for the court's decision). Therefore, issue preclusion should not foreclose an inquiry into the merits, and the second FED action should proceed. *See United States v. Int'l Bldg. Co.*, 345 U.S. 502, 505-06 (1953); *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 25, 834 A.2d 131.

Glenn Israel, Esq. (orally), Bernstein Shur, Portland, for appellants 20 Thames Street LLC and 122 PTIP LLC

Seth W. Brewster, Esq. (orally), and Micah A. Smart, Esq., Eaton Peabody, Portland, for appellee Ocean State Job Lot of Maine 2017 LLC

Cumberland County Superior Court docket number AP-2020-02
FOR CLERK REFERENCE ONLY